## Case No. 7,590.

### The J. W. BROWN.

[1 Biss. 76.] [1]

District Court, N. D. Illinois. Oct. Term, 1855.

BILL OF LADING—OPEN TO EXPLANATION —WHEN CARRIER NOT LIABLE FOR DEFICIENCY — NO ESTOPPEL BETWEEN ORIGINAL PARTIES.

1. A bill of lading is as between the original parties in the nature of a receipt, and is open to explanation. The respondents are not estopped from setting up a mistake, and that the property receipted for was not all delivered to them.

[Cited in Wichita Savings Bank v. Atchison, T. & S. F. R. Co., 20 Kan. 526. Cited in brief in Sioux City & P. R. Co. v. First Nat. Bank, 10 Neb. 556, 7 N. W. 311.]

2. The respondents, having satisfactorily shown that the whole of a cargo of wheat received by them was actually delivered to the consignee, are not liable for a deficiency from the amount receipted for in the bill of lading.

3. The doctrine of estoppel in pais is only applied to a bill of lading in the hands of a third party.

4. The fact that the shippers gave an order to the warehousemen for the cargo, and then settled with them on the faith of the bill of lading, does not take the case out of the general rule.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 139.]

The libel alleges that on the 14th of October, 1854, the schooner J. W. Brown received on board at Chicago, to be carried to Buffalo, 10,097 bushels of wheat, and that the captain of the schooner contracted to deliver the same to the libellants, or order, in Buffalo, and gave a bill of lading to that effect; that the libellants accounted with J. S. Root,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

from whose warehouse it was delivered, for that quantity, and that the captain knew the libellants would account with Root for the number of bushels mentioned in the bill of lading, and that owing to carelessness, negligence, and improper conduct, 715 bushels were never delivered at Buffalo. The answer admits that the bill of lading was given for the quantity mentioned in the libel, but insists that, owing to mistake or inadvertence, it should have been for 9,382 bushels, instead of 10,097; that the former quantity was all, in fact, that was received on board, and that none was lost in the transit from Chicago to Buffalo, but whatever was received was delivered. J. S. Root & Co. had a warehouse for storing wheat. Richmond & Co. had purchased of different persons Root & Co.'s warehouse receipts to the amount of 9,462 bushels at the time the vessel was loaded. The balance was made good, on the 17th of October, to Root & Co. Richmond & Co. kept a wheat account with the warehousemen. Whenever any warehouse receipts were purchased or any wheat stored, it was charged to Root & Co., and whenever a shipment was made it was credited to them. The libellants gave an order to the warehousemen for this cargo of wheat, and it was loaded accordingly. After it was loaded, the captain gave a receipt to J. S. Root for 10,097 bushels of wheat received on board of the schooner, on account of the libellants, and signed the bill of lading for that number. The captain brought the statement of the quantity to Richmond & Co., and Root & Co. were credited with that quantity, and a settlement was subsequently made upon that basis. When the cargo was delivered at Buffalo it was found to be short 715 bushels.

H. F. Waite, for libellant.
H. G. Miller, for claimants.

DRUMMOND, District Judge. The first point is as to the deficiency. How did it occur: by carelessness and neglect of the carrier in the transit, or was it in fact never delivered on board? There is something singular and inexplicable about it. It seems that there were two tallies kept, and that both agreed; and yet it is difficult to resist the conclusion that there was a mistake in some way, by which there was an over tally.

When the captain of the schooner brought the statement of the quantity of wheat from the warehouse to the clerk of the libellants, he stated that he did not believe that he had so much wheat on board: that his vessel had never carried so much, and could not, but as the tallies of his men and the warehousemen agreed, and he could find no errors in the figures, he would sign the bill of lading.

The evidence is that the wheat was weighed in hoppers, of draughts of fifty bushels each: part of it, however, was taken from a canal boat, and it is probable that some of it was twice weighed. It appears that nothing oc-

curred on the voyage by which any portion of the wheat could have been lost. The hatches were battened down as soon as the cargo was stowed, and were not removed till the arrival of the schooner in Buffalo, and then the wheat was found uninjured and undisturbed. No accident of any kind occurred during the voyage. The captain immediately after the discharge of the vessel made an affidavit of the deficiency, stating that all was delivered at Buffalo that was received at Chicago, and that it must have arisen, in consequence of a mistake at Chicago, on the part of the tallymen, which affidavit, it appears, was forwarded to the libellants. It would seem, therefore, as though there could be no doubt that the bill of lading was given for too large a quantity. It follows that the statement in the libel that the vessel received on board, 10,097 bushels is not true to its full extent, but as it is satisfactorily established that all was delivered at Buffalo that was received at Chicago, there were in point of fact, only about 9,382 bushels.

The next point to be determined is, whether there is anything in the case which operates as an estoppel against the owners of the schooner, and prevents them from showing as matter of evidence, that in fact they did not receive the quantity on board set forth in the bill of lading; because it is only upon this ground—that of equitable estoppel—that the claim of the libellants can be sustained.

This rule applies, when the bill of lading has been assigned to a third person, by the shipper. It is upon this principle, the case of Howard v. Tucker, 20 E. C. L. 661, was decided. The captain had signed a bill of lading, acknowledging the freight had been paid, which was contrary to the fact; and the court held the owners of the vessel were estopped by that acknowledgment, as against an assignee, to whom it had been endorsed for value. I think it will be found that this doctrine of estoppel, in pais, has only been applied to the bill of lading when it has been transferred to a third party.

The better opinion seems to be as between the original parties—shipper and owner of the vessel—that the bill of lading is in the nature of a receipt, as to the quantity put on board, and is open, like any receipt, to explanation as to the real quantity. Fland. Shipp. § 479, and notes; Abb. Shipp. pt. 4, c. 4, pp. 323–345; Bates v. Todd, 1 Moody & R. 106; Berkley v. Watling, 34 E. C. L. 32, 33. The libellants in this case were the shippers, and they bring the action against the vessel, and the question to be determined is, whether the fact that they gave an order to the warehousemen to deliver a cargo of wheat, and then settled with them upon the faith of the captain's receipt and bill of lading, takes this case out of the common rule.

The libellants had a certain quantity of wheat—at the time not all that was delivered —at the warehouse of J. S. Root. The captain was directed to load his vessel there, and the warehousemen were ordered to fill the vessel. It does not appear whether the order was written or verbal. No written order has been produced, and the presumption is, it was oral. A mistake, intentional or unintentional, having been made, the question is, to whom, under the circumstances, are J. S. Root & Co. accountable for the deficiency.

It may be conceded that the fault or error, as between the warehousemen and the vessel was common, still it was not wholly the fault of the captain, and possibly, as the warehousemen only had the machinery for weighing, &c., they, in case of error, should be held as being most in fault. It is to be recollected that this is not the case of the transfer of a warehouse receipt, taken in good faith for what it bears on its face, but of the delivery of a cargo by warehousemen, who, in this respect, were acting under the direction of the libellants. To say the least, they were quite as much their agents as they were agents of the vessel, and there is, besides, a direct privity of contract and of interest between the libellants and the warehousemen, which would, if this were for money, make the latter liable to the former, upon well settled principles, in an action for money had and received to their use, as for so much money paid by mistake. It must be admitted that the case is not entirely free from difficulty, but it seems to me the rule here sanctioned is the safer and sounder one, all things considered. The libel must therefore be dismissed with costs.

NOTE. A carrier may show by clear proof that the bill of lading was signed, by mistake, for a greater quantity than was shipped. Goodrich v. Norris [Case No. 5,545]. For a full collection of the authorities on this point, see 1 Pars. Shipp. & Adm. p. 190, note 4. The master of a vessel is not liable for more cargo than was actually received, notwithstanding he has, by mistake, signed a bill of lading for a greater amount. The Tusker [Case No. 14,274]. A variance between the amount of cargo stated in the bill of lading, and that ascertained on delivery, may be explained by showing that the mode of ascertaining the quantity is such that similar variations are necessarily of frequent occurrence. Manchester v. Milne [Id. 9.006]; Manning v. Hoover [Id. 9,044]. Consult, also, 3 Kent. Comm. 208, and numerous authorities there cited.