## WICHITA SAVINGS BANK v. ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. BILLS OF LADING; *Recitals Conclusive against Carrier Issuing Them; Estoppel.* Where the agent of a railroad corporation which is engaged as a common carrier has authority to receive grain for shipment over its road, and issue in the name of the corporation a single bill of lading for each consignment received, receives 23,000 pounds of wheat as a single consignment for transportation to St. Louis, Mo., and at the instance of the shipper issues in the name of the corporation two original bills of lading, of the same terms, tenor, and effect, for such single consignment, and the shipper negotiates one of said original bills to W., and immediately thereafter negotiates and transfers by indorsement in writing the other of said original bills to the Wichita Bank, and the bank, knowing the custom of the railway corporation to issue only one bill of lading for each shipment, and relying wholly on the bill for its security, accepted the same, advanced money thereon in good faith, and in the regular course of its business, and having no knowledge of the issuance of the two original bills of lading, and W. as the holder of the bill assigned to him, receives all of the wheat so consigned and forwarded to St. Louis, *held,* that the shipper being insolvent, and having absconded, the railway corporation is estopped by its statement and promise in the bill of lading to deny that it has received the grain mentioned therein, and is liable to the indorsee and assignee for its advances made by the bank in good faith on the bill of lading.

2. ―――― *Loss by Innocent Party; Superior Equity.* Where one of two innocent parties must suffer from the wrongful or tortious acts of a third party, the law casts the burden or loss upon him by whose act, omission, or negligence such third party was enabled to commit the wrong which occasions the loss.

### Error from Sedgwick District Court.

ACTION by *Wichita Savings Bank,* to recover of the *Railroad Company* $758.38, and interest thereon from 6th September 1876. The petition, among other facts, alleged, that one Henry Schneider, on said 6th of September, borrowed from plaintiff said sum of $1,250, for thirty days, and assigned and delivered to plaintiff, as security for said loan, four bills of lading issued by the duly-authorized agent of the *Railroad Company* to said Schneider, each of which bills stated that said *Railroad Company* had received from Schneider a certain quantity of wheat to be transported by defendant over its railroad from Valley Center, in Sedgwick county, to St. Louis, Mo., and there delivered to said Schneider, or his assignee; that plaintiff advanced the money and took the bills of lading as security therefor, relying upon the truth of the matters in said bills set forth; that said Schneider had not shipped said wheat, nor any part thereof; that said bills were false and fraudulent, and that of the sum so advanced by plaintiff to Schneider there remained due and unpaid the sum of $758.38, and that Schneider had absconded, and was wholly insolvent. Trial at July Term 1877. The court found for the defendant, and gave judgment against the plaintiff for costs. The plaintiff brings the case here.

*Sluss & Hatton,* for plaintiff.

*Ross Burns,* and *J. G. Waters,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This action was based upon four bills of lading, issued by the Atchison, Topeka & Santa Fé Railroad Company, covering four shipments of wheat. Two of the bills of lading called for 23,000 pounds of wheat each, and

two called for 25,000 pounds each—all consigned to the order of Henry Schneider at St. Louis, Mo. As the point involved here is the same, as to each of the bills of lading, we will follow the course pursued by the counsel in their argument, and state the case as if covering simply one bill.

On the 4th of September 1876, Henry Schneider delivered to the railroad company, at Valley Center, a certain lot of wheat which was put into a car to be consigned to his order, or assigns, at St. Louis, Mo. At the time of the delivery of the wheat to the railroad company, the defendant's agent at Valley Center issued and delivered to Schneider two original bills of lading, of the same terms, tenor, and effect, for the wheat, and each of which showed the receipt of 23,000 pounds of wheat, and its consignment to Henry Schneider, or to his order or assigns. There was not more than twenty-three thousand pounds of wheat delivered, covered by the two bills of lading. Schneider procured the issue of two original bills of lading, instead of one, upon his statement that he wished one original bill of lading to file in his office as a memorandum of the transaction. Schneider took the two original bills of lading to Wichita, and on September 5th, negotiated one of them to Messrs. Woodman & Son, for a valid consideration. On the 6th of September, Schneider negotiated the other original bill of lading to the plaintiff, a banking corporation, in the regular course of business, and duly transferred and indorsed the same in writing to the bank. The bank accepted the bill of lading from Schneider, and advanced him in good faith the money sued for upon the bill of lading, and wholly relying upon it for security for the advancement, and without any knowledge that two bills of lading had been issued for the wheat. The wheat was forwarded to St. Louis by the railroad company, and there delivered to the holder of the bill of lading so negotiated to Messrs. Woodman & Son. The defendant was, at the several dates above named, a railway corporation, and engaged in operating a line of railway from the city of Wichita, by and through the town of Valley

34—20 KAS.

*Statement of facts.*

Center, and by and through the county of Sedgwick, in the state of Kansas, to Kansas City, in the state of Missouri, and in carrying and transporting grain and other commodities for hire to St. Louis, Missouri. It was the usage and custom of the railroad company, at its station of Valley Center, to issue but one original bill of lading for any one shipment of grain, which custom was known to plaintiff. The agent of the defendant by whom the bills of lading were issued had authority to receive wheat to be transported by the railroad company over its line to St. Louis, Missouri, and to issue bills of lading therefor; but the company had given the agent no authority to issue more than one original bill of lading for any single shipment. Schneider being worthless, and having absconded, the bank lost the principal part of the amount of its advancement, and thereupon brought this action to recover the amount of its loss. Upon an agreed statement of facts, substantially in accordance with the foregoing, the district court rendered judgment for the defendant.

The amount involved in this action is less than $1,000, but the questions in issue are exceedingly important. Our

1. Bills of lading; general business interests; shipment and transportation of products.

state is a great producer of grain, large amounts of which seek markets outside of its boundaries. The means of its transportation are mainly limited to railroads, and commercial transactions by our grain dealers extend to millions, each year. The great mass of these products, when started to eastern markets, are purchased and paid for through bills of lading. The custom of grain dealers is to buy of the producer his wheat, corn, barley, etc., then deliver the same to a railroad company for shipment to market. The railroad company issues to the shipper its bill of lading. The shipper takes his bill of lading to a bank, draws a draft upon his commission merchant, or consignee, against the shipment, and attaches his bill of lading to the draft. Upon the faith of the bill of lading, and without further inquiry, the bank cashes the draft, and the money is thus obtained to pay for the grain

purchased, or to repurchase other shipments. In this way, the dealer realizes at once the greater value of his consignments, and need not wait for the returns of the sale of his grain to obtain money to make other purchases. In this way the dealer, with a small capital, may buy and ship extensively; and while having a capital of a few hundred dollars only, may buy for cash, and ship grain valued at many thousands. This mode of transacting business is greatly advantageous both to the shipper and producer. It gives the shipper who is prudent and posted as to the markets, almost unlimited opportunities for the purchase and shipment of grain, and furnishes a cash market for the producer at his own door. It enables the capitalist and banker to obtain fair rates of interest for the money he has to loan, and insures him, in the way of bills of lading, excellent security. It also furnishes additional business to railroad companies, as it facilitates and increases shipments of produce to the markets. A mode of business so beneficial to so many classes, ought to receive the favoring recognition of the law to aid its continuance; and the later decisions have gone very far to strengthen the *quasi* negotiability of bills of lading, independent of any statutory authority. Mr. Justice Miller said, in *McNeal v. Hill*, Woolw. 96, "As civilization has advanced, and commerce extended, new and artificial modes of doing business have superseded the exchanges by barter, and otherwise, which prevail while society is in its earlier and simpler stages. The invention of the bill of exchange is a familiar illustration of this fact. A more modern, but still not recent invention, of like character, for the transfer, without the somewhat cumbersome and often impossible operations of actual delivery of articles of personal property, is the indorsement, or assignment, of bills of lading and warehouse receipts. Instruments of this kind are *sui generis*. From long use and trade, they have come to have among commercial men a well-understood meaning, and the indorsement or assignment of them as absolutely transfers the general property of the goods and chattels therein named, as would a bill

of sale. * * * If the warehouseman gives to the party who holds such receipt a false credit, he will not be suffered to contradict his statement which he has made in the receipt, so as to injure a party who has been misled by it." The authorities speak of bills of lading passing from successive vendor to vendee, and thus become muniments of title of great value. Where one advances money on a bill of lading, or buys the property therein set forth by taking a transfer of such instrument absolutely, the only evidence which he has of the quantity of goods which he has bought, or advanced money on, may be the statement contained in the bill of lading. Indeed, one of the main uses of bills of lading of grain, at this day, is to afford shippers opportunity to obtain advances upon their shipments. When issued, the parties issuing them have the knowledge that they may and probably will be used with commission merchants, or at some bank, to obtain advances of money. In the most of cases, this result is almost certain to follow. We may say that the bills of lading, covering the shipments in this case, were issued with the expection that one of the two originals would be hypothecated with some banker, commission merchant, or other party, so universally is this practice recognized and adopted. We make these preliminary remarks, of the character and usage of bills of lading, as they tend to clearly present the questions in controversy, and make, it seems to us, the solution of them easy.

In accordance with well-settled rules, the plaintiff, knowing the custom of the defendant to issue only one original bill of lading for any one shipment of grain, having made advances on the faith of the bill of lading issued by the agent of the company within the apparent scope of his authority, was entitled to recover of such defendant all damages resulting to him from the issuance of two original bills of lading for the same grain — or perhaps we might better say, for this false bill of lading — as the defendant was bound by the act of its agent, and therefore estopped from denying it had the grain stated in the bill sued on. When the defendant knew

to what uses bills of lading could be and usually were employed, it was guilty of negligence in issuing two original bills for the same wheat, in violation of its usual custom. It is true, one was issued, so that Schneider might file it away; but when issued, it should have been marked or designated as a "duplicate," as to be incapable of being hypothecated to defraud those who dealt in such paper. After the wheat shipped by Schneider had been sold to Messrs. Woodman & Son, by transfer of the bill of lading negotiated to them on September 5th, the other bill of lading, transferred to the plaintiff on September 6th, was as worthless and valueless, as if it had been a false bill. Indeed, it was, in this respect *then false*, for it purported to cover certain wheat which it did not represent. The defendant directly afforded Schneider opportunity to commit a fraud upon the plaintiff by issuing the second bill of lading; and its action in this regard was just as harmful to the plaintiff as if it had issued said bill with the intention to defraud the bank, or as if no wheat had been received by it at all. Both of the bills are admitted to be originals, and the company was certainly guilty of culpable negligence.

In a late English case, Brett, J., stated the doctrine of estoppel as follows: "If in the transaction itself, which is in dispute, one has led another into the belief of a certain state of facts, by conduct of culpable negligence calculated to have that result, and such culpable negligence has been the proximate cause of leading, and has led, the other to act, by mistake, upon such belief, to his prejudice, the second cannot be heard afterward as against the first to show that the state of facts referred to did not exist." *Carr v. London Railway*, Law Rep. 10; C. P. 307. In the case of *Armour v. M. C. Rld. Co.*, 65 N. Y. 111, it was said, that defendant's agent, having authority to issue bills of lading, upon delivery to him by M. of a forged warehouse receipt, issued to M. two bills of lading, each stating the receipt of a quantity of lard consigned to plaintiffs at New York, and to be transported and delivered to them. Said agent was informed by M. at the time of the

delivery of the bills of lading that he intended to use them at bank. M. drew sight-drafts on plaintiffs, to which he attached the bills of lading. These were delivered to a bank, and were forwarded to New York, and the drafts were paid by plaintiffs, on presentation, upon the faith and credit of the bills of lading. In an action upon the bills of lading, it was held that defendant was bound by the acts of his agent, and was estopped from denying the receipt of the lard, and that plaintiffs were entitled to recover. See also, Bigelow on Estoppel, 429; *In re Brown*, 1 Bissell, 76; *Bradstreet v. Heran*, 2 Blatchf. C. C. R. 116; *Michael v. Ware*, 3 Neb. 229; *Relyea v. New Haven R. M. Co.*, 42 Conn. 579; *Meyer v. Peck*, 28 N. Y. 590; *McGowan v. Ins. Co.*, 18 Kas. 300; Redfield on Car. & Bail., § 247.

Considering the custom of the railroad company, the mode of doing business with bills of lading, the bank was guilty of no negligence in advancing the money to Schneider. The company was guilty of culpable negligence, which resulted in the consummation of the fraud. "The representations in the bills were made to *any one* who in the course of business might think fit to make advances on the faith of them." The bank acted on these representations in good faith. Schneider, who obtained the fruits of this fraud, has fled the state, and is insolvent. The bank, or the railroad company, must suffer. Who, under all the circumstances, ought to bear the loss? The superior equity is with the bank. It advanced moneys on certain representations which were virtually untrue. In this case, is presented every element to constitute an estoppel *in pais*, within the doctrine that, where one of two innocent persons must suffer by reason of the fraud or misconduct of a third, he by whose act, omission, or negligence, such third party was enabled to consummate the fraud, ought to bear the loss. Thus the defendant was liable, and the court below committed error in holding otherwise.

We agree with the counsel for the defendant, that a bill of lading is not a negotiable instrument, and with much that is

A. T. & Santa Fé Rld. Co. v. Jones.

Bill of lading; negotiability. stated in their brief concerning the character of these instruments in general. But most of the decisions referred to by them contain discussions of the negotiability of this class of paper, and are not strictly authority, as the defendant's liability does not depend upon the negotiable character of bills of lading. Probably it would be beneficial to the commercial interests of the state, for the law-making power to make these instruments negotiable in all the meaning these words imply; but in the absence of such legislation the defendant ought not to have authority to issue bills of lading for grain, and thus put it in the power of the holder thereof to treat with the public on the representation made in them, and then, when money has been advanced on the faith of such statements, by innocent parties dealing in such paper in the regular course of business, contradict the representations of the paper, and thereby injure the persons who have been misled. The principle of estoppel does and ought in such cases to apply.

The judgment of the district court will be reversed, and the case remanded, with instructions to enter judgment for the plaintiff for the amount stated in the agreed statement of facts, with costs.

All the Justices concurring.