THE FRICK COMPANY v. CHARLES H. FALK et al.

1. SALE—*Warranty, Breach of—Duty of Injured Party.* Where a machine is purchased which does not meet the conditions of the contract, and the defect is one that can be easily repaired, it is the duty of the injured party to take reasonable steps to have the repair made, and to make the liability of the other as light as possible. Damages cannot be awarded upon the assumption that the defect is to continue indefinitely.

2. FINDINGS, *Not Sustained.* The evidence in the case examined, and *held* to be insufficient to sustain the findings of the jury.

*Error from Edwards District Court.*

ACTION to recover upon a promissory note. Judgment for the defendants, *Falk* and another, at the May term, 1889. The plaintiff *Company* comes here. The opinion states the facts.

*W. H. Robb,* for plaintiff in error:

The warranty is as follows: "That it is manufactured of good material, and good workmanship, and by proper management it will perform well." The conditions were, that if there was any defect notice was to be given within 10 days. The notice was not given.

The only possible defect that could be claimed for on account of the pinion failing to mesh deep enough in the cogs would be on account of deficiencies in general adaption for threshing or general purposes, and it is doubtful even whether this phrase would cover the defects claimed by the

defendant. The defective pinion was before the witnesses for inspection, and they testified that it was not unreasonably worn for the length of time it had been in use.

The defendants did not comply with the terms of the warranty. They had obligations as well as the plaintiff. This is not a warranty all on one side — a general warranty on the sale of goods, but it imposes obligations upon the defendants which they did not fulfill, and they can neither rescind the contract nor claim damages. This is a well-fixed rule. *Threshing Machine Co. v. Vennum*, 23 N. W. Rep. (Dak.) 563.

The verdict was contrary to the evidence.

*W. H. French*, for defendants in error:

The evidence in this case abundantly shows notice to N. Roberts, the agent in Kinsley, and also written notice to the plaintiff; in fact, a number of letters passed between the Falks and the plaintiff in relation to the matter. See, as to sufficiency of notice, *Furneaux v. Esterly*, 36 Kas. 539, where it is held that actual notice is sufficient, no matter how received. See, also, *Badget v. Frick*, 5 S. E. Rep. 355.

There was testimony tending to establish every fact necessary to uphold the verdict. *Radway v. Ellis*, 37 Kas. 256; *Higginbotham v. Fair*, 36 id. 742; *Clarkson v. Hibler*, 39 id. 125. See also, *Elerick v. Braden*, 38 Kas. 83; *Osborne v. Ehrhard*, 37 id. 414; *Kaufman v. Springer*, 38 id. 730; *Wood v. Dickinson*, 34 id. 137.

The amount of the verdict is supported by the testimony, and this court has often decided that it will not reverse a judgment on the ground that the verdict is too large, if there is any evidence which tends to support it.

Before a new trial will be granted on the ground of excessive damages, the damages must be so disproportioned to the injury that it is clearly shown that the verdict was the result of prejudice or passion on the part of the jury. 16 Kas. 526; 29 id. 597. Nor will it be set aside where the evidence is conflicting on the amount of damages and there appears to be enough to support the verdict. 8 Kas. 159.

The opinion of the court was delivered by

JOHNSTON, J.: On January 5, 1885, Falk Bros. purchased from the Frick Company an Eclipse steam engine for $1,320, for the price of which they executed three promissory notes in the sum of $440 each, payable, respectively, December 1, 1885, December 1, 1886, and December 1, 1887. It was sold subject to a warranty, in which it was agreed that it was manufactured of good material, of good workmanship, and by proper management would perform well, if the rules and directions furnished by the manufacturers were intelligently followed. If it failed to operate according to the contract, written notice was to be given by the purchasers within 10 days, and reasonable time allowed for the seller to remedy the defects. If any defects were found, the sellers were required to remedy them, and if the fault was in the engine it was to be taken back, and any payments made were to be refunded.

The engine was operated by the purchasers during the years 1885, 1886, and 1887, and the notes due December 1, 1885, and December 1, 1886, were paid by the purchasers. Default was made in the payment of the note due December 1, 1887, and on June 14, 1888, action was brought to recover upon that note. The defendants then alleged that the engine was not manufactured of good material and workmanship, and that it was unfit for the purposes for which it was purchased. They alleged that they had sustained damages in the amount of $720, for which they asked judgment. At the trial, the defendants claimed that the engine was defective in two particulars: one that the mud cleats furnished could not be properly fitted on the drive wheels, and another, that the spur pinion did not mesh deep enough in the gear of the machine. For these defects, the jury by their general verdict allowed the defendants $603.25 as damages. In answer to special questions, they stated that they allowed $444.50 for the defect in the spur pinion, and $158.75 on account of the defects in the mud cleats. The testimony is wholly insufficient to sustain

these findings. The first two payments were made upon the engine without complaint or the claim of any credits on account of defects in the engine. No notice was given that the pinion was insufficient within the time required by the contract, nor until 1887. It appears that the defect was not discovered until the engine had been used through two threshing seasons. In respect to the mud cleats, it seems that this defect was discovered soon after the purchase of the engine, and an attempt was made to have it repaired. It appears that the holes in the wheels through which the mud cleats were to be fastened to the wheels were too wide apart. A chisel was obtained from the plaintiffs with which some of the holes were widened and about one-half of the cleats were fastened on. Altogether there were 32 holes necessary for fastening the cleats upon the wheels, and the testimony is that these could be drilled for 25 cents each. The limit of expense in remedying this defect would not exceed $20, and one of the defendants, in estimating the cost of fitting them on the wheels, placed it at $2.50; and yet the jury, upon this testimony, awarded the defendants $158.75.

It is true these cleats were necessary to the successful operation of the engine, and without them it would not perform as well as it should; but the defendants could not, by neglecting to have the repairs made for several years, enhance the damages which they might recover. Damages cannot be awarded on the assumption that the defect is to continue indefinitely.

"It is the duty of a party who has suffered an injury for the nonperformance of a contract to take reasonable measures to make the injury or damages for which he intends to hold the other party liable as light as possible." (*Lumber Co. v. Sutton*, 46 Kas. 192; *Town Co. v. Leonard*, 46 id. 354.)

It was shown that the repair could have been made at the neighboring shop for a trifling expense, and it was the duty of the defendants to have had the repair made at once, and the expense of the repair and any actual loss resulting from having it done, such as the loss of time, was the measure of

their recovery. The actual loss shown by any of the testimony, however, is out of all proportion with that allowed by the jury. The testimony in respect to the liability of plaintiffs for the alleged defect in the pinion is not so clear, but if any liability was shown, it was only a fraction of that allowed by the jury. It is very clear that the findings are not sustained by the testimony, and therefore the judgment will be reversed, and the cause remanded for another trial.

All the Justices concurring.