No. 18,908.

O. MADDUX, *Appellant,* v. THE WESTERN UNION TELEGRAPH COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

DEALING IN "MARGINS" — *Telegram for Additional Margins — Delay in Delivery — Deal Closed Out — Price of Corn Decreased—No Damages—No Recovery.* A broker was carrying 10,000 bushels of July corn for the plaintiff on margins. By the negligent failure of the defendant promptly to deliver a telegram notifying plaintiff of a demand for additional margins, the transaction was closed out. In an action against the telegraph company to recover damages, the rule that it is the duty of an injured party to make reasonable exertions to help himself, and thereby reduce his loss, is applied, and held, that the measure of plaintiff's damages, if he sustained any, was necessarily the difference between the price at which the deal was closed out and the price at which he could have reinstated it within a reasonable time after notice; and the fact being undisputed that the plaintiff, three days after notice that the deal was closed, neglected to avail himself of an opportunity to reinstate his deal, when he could have bought corn at a lower price than that at which it was sold out, he sustained no damages by the defendant's negligence.

Appeal from Harper district court; THORNTON W. SARGENT, judge *pro tem.* Opinion filed June 6, 1914. Affirmed.

*A. C. Beeman,* of Cherokee, Okla., and *H. C. Kirkendall,* of Anthony, for the appellant.

*R. R. Vermilion, Earle W. Evans,* and *Joseph G. Carey,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In his action plaintiff sued for damages arising from the failure of the telegraph company promptly to deliver a telegram. The jury returned a verdict in his favor for $600, and made a number of special findings. The court sustained a motion for judgment on the findings in favor of the defendant, and the plaintiff has appealed.

The plaintiff was living in Tucson, Ariz. Sometime previous to May 28, 1910, he had purchased, through a firm of brokers in Kansas City, ten thousand bushels of corn for July delivery. The original purchase price was sixty-four and five-eighths cents. It was a marginal deal in accordance with the quotations, rules and regulations of the Chicago Board of Trade. From the time the corn was first purchased the prices fluctuated considerably, and the plaintiff at various times had sent money to his Kansas City brokers to keep his deal properly margined. On May 27 they delivered to the defendant at Kansas City a telegram, to be transmitted to him at Tucson, reading as follows: "July corn fifty seven and three eighths. Remit three hundred. Answer quick." The message was delivered to him May 28 at twelve-thirty P. M., along with another telegram from his brokers, dated May 28, reading as follows: "Sold ten July corn fifty-six and seven-eighths."

Upon receipt of the telegrams plaintiff wrote the brokers the following letter:

"TUCSON, ARIZ.    May 28, 1910.
"Houston, Fible & Company,
"DEAR SIRS:

"Your telegrams of the 27" and 28" received at 12:30 P. M. today. Sorry I failed to get the one you sent yesterday calling for $300.00 margin, which I would have sent by return wire for I believe there will be a time in next month when July corn will sell much higher than it is now. When I got the morning paper and seen July corn closed yesterday at 58⅛ I wired you

$150.00 at 9 A. M. our time but I suppose you failed to get it in time. If there is any loss by me being closed out of this deal the Western Union people are responsible for it for they had my address and there was no excuse for delay in delivery. Please send me a draft for my balance account. I remain your respectfully,

OLIVER MADDUX,

1124 S. 4 Avenue, Tucson, Ariz."

Plaintiff testified that he got the Chicago market reports every morning through a newspaper published at El Paso, which gave the market of the day before. The jury find that subsequent to May 28, 1910, the plaintiff made no attempt to reinstate the deal, which he was informed his brokers had closed out. The findings also show that the next opening of the market was on Tuesday morning, May 31, Sunday and Decoration day having intervened, and that the opening quotation of July corn on that morning was fifty-six and one-eighth cents. The jury further find that if the plaintiff had directed his brokers to reinstate his deal, arranging for the necessary margin of $300, prior to the opening of the market on May 31, his brokers would have repurchased the corn for his account. This finding is based upon the correspondence between the parties, which showed their willingness to reinstate the transaction if the plaintiff had so desired.

It is conceded that the defendant was negligent in its failure to deliver the telegram promptly; but it conclusively appears from the findings that plaintiff suffered no loss by reason of the negligence. If July corn had advanced in price before plaintiff had time to repurchase, he might have shown a loss occasioned by the failure to receive the telegram in time; but instead of having advanced, July corn was lower the next market day than it was when the telegram was sent. Let us suppose that by the defendant's failure to promptly deliver a telegram plaintiff had been prevented from closing a contract for the purchase of 10,000 bushels of actual corn which he desired to feed to stock, and

that corn in the meantime advanced in price, so that in order to obtain the necessary corn he had been obliged to pay three cents a bushel more than if the contract had been completed. It is clear that his damages in such a case would be the difference between the contract price and the price he would have to pay to procure the corn. If, however, in the supposed case, corn instead of advancing had receded in price and the plaintiff could have gone upon the market the next day and purchased the same amount at a lower price than his proposed contract called for, he could not show that he was damaged at all by the failure to complete his contract. In any event he could recover only such damages as were the natural and necessary result of defendant's negligence, after he had exercised reasonable care to minimize his loss as far as possible. A party is never permitted to recover damages which by reasonable care he could have avoided. (37 Cyc. 1756, 1757.) In the recent case of *Holly v. City of Neodesha,* 88 Kan. 102, 127 Pac. 616, the plaintiff sued to recover damages for the wrongful shutting off of water which was necessary for him to have in order successfully to carry on his business as a florist. In the course of the opinion it was said:

"Under the circumstances it was the legal duty of the plaintiff to secure water from the city at once, and the measure of his damages would have been the amount he would have been obliged to pay in so doing, and the amount of damages, if any, provable to the time water could have been again turned on. (*K. P. Rly. Co. v. Mihlman,* 17 Kan. 224, 234; *Town Co. v. Leonard,* 46 Kan. 354, 358, 26 Pac. 717; *Frick Co. v. Falk,* 50 Kan. 644, 32 Pac. 360.)" (p. 113.)

An extreme case which illustrates the rule is *Loker v. Damon,* 34 Mass. (17 Pick.) 284. That was an action in trespass for removing a few rods of fence. The plaintiff knew the fence was down but neglected to repair it. The measure of damages was held to be the cost of repairing the fence and not the injury to the

following year's crop caused by cattle passing through the opening.

In cases of contract as well as of tort the rule is that it is the duty of an injured party to do whatever he reasonably can to lessen the injury. (*Chamberlin v. Morgan,* 68 Pa. St. 168.)   The same rule has often been applied in cases involving the conversion of bonds and stocks.   In *Baker v. Drake,* 53 N. Y. 211, 13 Am. Rep. 507, the defendant, a broker, was carrying stock for the plaintiff on a margin.   In an action for damages for the unauthorized sale of the stock the plaintiff recovered in the lower court the highest price between the time of conversion and the time of trial.   The judgment was reversed by the court of appeals in an able opinion by Judge Rapallo, reviewing all the cases.   In the opinion it was said:

"The customer is entitled to recover such damages as would naturally be sustained in restoring himself to the position of which he has been deprived.   He certainly has no right to be placed in a better position than he would be in if the wrong had not been done." (p. 217.)

From the letter written by the plaintiff to his brokers it is apparent that the plaintiff was under the mistaken impression that he could, without attempting to repurchase or reinstate his deal, look to the telegraph company to carry it for him, and in the event July corn advanced in the market, recover from the defendant the difference in price.   In *Devlin v. Pike,* 5 Daly (N. Y.), 85, Daly, Ch. J., stating the rule in such cases, said:

"If the property converted or to be delivered consists of merchandise which is ordinarily bought and sold in the market for the purpose of traffic, the plaintiff is entitled to recover the highest market price which that kind of merchandise may have reached between the time of the breach or conversion and a reasonable time within which to replace it, or to bring the action; that what is a reasonable time depends upon the circumstances of the particular case, and where the facts are undisputed is a question of law." (p. 95.)

In *Wright v. Bank of the Metropolis,* 110 N. Y. 237, 18 N. E. 79, 6 Am. St. Rep. 356, it was declared to be the duty of the injured party to repurchase the property in a reasonable time, and that when the facts are undisputed and different inferences can not reasonably be drawn from the same facts, what is a reasonable time becomes a question of law. Referring to a supposed difference between the case of one engaged in a stock speculation and the case of an absolute owner of stock wrongfully sold by the pledgee, it was said in the opinion:

"But in both cases the qualification attaches that the loss shall only be such as a proper degree of prudence on the part of the complainant would not have averted, and a proper degree of prudence on the part of the complainant consists in repurchasing the stock after notice of its sale, and within a reasonable time. If the stock then sells for less than the defendant sold it for, of course the complainant has not been injured, for the difference in the two prices inures to his benefit. If it sells for more, that difference the defendant should pay." (p. 247.)

In the opinion it is also said:

"But to presume, in favor of an investor, that he would have held his stock during all of a period of possible depression, and would have realized upon it when it reached the highest figure, is to indulge in a presumption which, it is safe to say, would not be based on fact once in a hundred times." (p. 248.)

To the same effect is *Gruman v. Smith,* 81 N. Y. 25; *Colt v. Owens et al.,* 90 N. Y. 368, where it was held to be the duty of the plaintiff to repurchase the stock within a reasonable time.

The evidence shows and the jury found that if plaintiff's deal had been carried on he could have exercised the option to close it at the market quotation any time during July, and that on July 30 July corn opened on the Chicago Board of Trade at sixty-three cents. Upon the theory that if his purchase had not been closed out he would have carried it until the last day of July and

realized the difference between the price at which he was closed out and the highest price reached during the month of July, the jury awarded him as damages the difference between the two quotations. Manifestly the theory upon which the jury proceeded is purely speculative and one which experience has shown had more chances against than in its favor. However, the plaintiff could not remain supine and inactive; the duty rested upon him to make reasonable exertions to help himself and thereby reduce his loss, and at the same time lessen the responsibility of the party at fault. The measure of his damages, if he sustained any, was necessarily the difference between the price at which his corn was sold out and the price at which he could have repurchased within a reasonable time thereafter, which was Tuesday, May 31, the first day the market was open, at which time his corn could have been rebought at a lower figure than the price at which it was sold. The demonstrated fact shown by the evidence and findings is that the net result of the neglect to deliver the telegram promptly is that the plaintiff received on May 28 fifty-six and seven-eighths cents for corn which was worth three days later only fifty-six and one-eighth cents. Since it is apparent that he sustained no damages by the negligence of the defendant, the trial court rightly gave judgment against him.

The judgment is affirmed.