/ ɪʲ ɪʲ (ʲ₁ ₁ ·₅ₒ—ₓ

No. 19,051.

J. R. HAROLD, *Appellee,* v. THE ATCHISON, TOPEKA
AND SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. BILL OF LADING—*Innocent Holder—Conclusion Against Car-
rier—Delay in Shipping Corn—Damages.* The rule which in-
vests the innocent holder of a bill of lading with rights not
available. to the shipper, declared in *Savings Bank v. A. T.
& Santa Fe Rld. Co.,* 20 Kan. 519; *Railway Co. v. Hutchings,*
78 Kan. 758, 99 Pac. 230; and *Hutchings ·v. Railway Co.,*
84 Kan. 479, 114 Pac. 1079, is followed in a case where the
plaintiff purchased corn described in a bill of lading, and paid
the shipper's draft attached to the bill in the usual course of
business.

2. SAME—*Shortgage on Grain Shipment—Attorney's Fee.* The
provisions of section 7107 of the General Statutes of 1909, al-
lowing an attorney's fee upon the prosecution of claims for
damages against a railway company for shortage on ship-
ments of grain, seed, or hay, are not obnoxious to the federal
regulation of interstate commerce.·

Appeal. from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed Decem-
ber 12, 1914. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A.
Scott,* all of Topeka, for the appellant.

*J. Graham Campbell,* and *Ray Campbell,* both of
Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The plaintiff, a grain dealer at Wichita,
seeks to recover damages from the railway company
for failure to deliver in a reasonable time a carload of
shelled corn at Elk Falls, in accordance with a bill of
lading issued by the company at Kansas City, Mo.

On September 14, 1910, the plaintiff sold to Shoe &
Jackson a car of No. 3 shelled corn, to be shipped to
Elk Falls within seven days. On the same day the

plaintiff purchased car No. L. W. 33,791 of bulk corn from the Nevling Elevator Company at Wichita, which endorsed to him a bill of lading issued by the defendant, dated September 21, 1910, showing the receipt of the corn on that day at Kansas City, Mo., from C. V. Fisher Grain Co., consigned to order of the shipper at Elk Falls, "Notify Nevling Elevator Company." The plaintiff paid a draft attached to the bill.

The corn did not arrive at Elk Falls until October 9, and because of the delay was not accepted by Shoe & Jackson. The sale had been made at 63 cents per bushel, which plaintiff would have received had it been delivered in a reasonable time after September 21. By reason of a decline in the market it was worth only 55 cents per bushel on arrival, and was sold by the plaintiff at that price. Moreover there had been a loss of 2000 pounds in transportation.

It appears that the shipment intended to be described in the bill of lading originated at Yanka, Neb., on the Union Pacific railway and was billed on the car L. W. 33,791 by James Bell & Son to shipper's order, Topeka, notify C. V. Fisher Grain Co., care of Santa Fe, for shipment. The bill was dated at Yanka, September 21, and was endorsed by Bell & Son to Fisher Grain Company. That company paid the shipper's draft, took the bill of lading to the defendant's agent at Kansas City and received in exchange the bill of lading, first referred to, on the 24th day of September instead of the 21st day of September, the date named in the instrument. The car arrived in Topeka on September 28, and was set by the Union Pacific company to the Atchison, Topeka & Santa Fe Railway Company, but on September 30, it was set back to the Union Pacific company because the car was in bad condition. The Union Pacific company then sent it to an elevator, where the corn was transferred to another car, and on October 6 was set to the Atchison, Topeka & Santa Fe Railway Company, and by that company was moved to Elk Falls. It was never at Kansas City.

The issuance of the last bill of lading at Kansas City on the 21st of September for corn that did not reach the Santa Fe railway until September 28 is explained by the defendant as an error in the date of the bill.

The contention of the plaintiff is that having received the bill of lading in the usual course of business, showing a shipment on September 21, which was in time to meet the requirements of his contract of sale, he relied upon the statements in the bill, and that the defendant is responsible for the natural and probable consequence of its error or mistake in issuing it. He had no notice from the bill or otherwise that the shipment originated over another line, or at another place, or that the corn was never in Kansas City, or that the date was wrong, or that the car was in bad order; and insists that the company was bound to know that the bill of lading might in the ordinary course of business be negotiated and transferred to an innocent purchaser.

The defendant contends that having carried the corn to its destination within a reasonable time after it was in fact received it is not liable for any loss caused by error in the date of the receipt shown upon the bill or by the bad condition of the car or otherwise. Attention is called to the fact that the corn was not in fact received by the defendant until after the time limit for shipment agreed upon in the plaintiff's contract of sale had expired. It is also argued that a wrong measure of damages was applied.

The first question to be decided is whether as against the plaintiff the company is bound by the statements in its bill of lading, which is in the usual standard form, approved by the Interstate Commerce Commission, showing an original shipment at Kansas City to Elk Falls to shipper's order. The defendant refers to the instrument as an exchange bill of lading, but there is nothing upon it to indicate that it was so issued, and the plaintiff had no knowledge that the facts were not as stated in the instrument. Practically the same question was presented in *Railway Co. v. Hutchings*, 78

Kan. 758, 99 Pac. 230, and *Hutchings v. Railway Co.*, 84 Kan. 479, 114 Pac. 1079. In the first opinion in that case conflict in authority upon the question whether a carrier may be held liable to an innocent holder upon a bill of lading where it has not received the goods was fully considered, and it was held, following the decision in *Savings Bank v. A. T. & Santa Fe Rld. Co.*, 20 Kan. 519, that the carrier is liable in such a case "because the knowledge whether the goods have been received, and therefore the power in fact conferred, lies peculiarly with the carrier's agent, who is held out to the public as having authority to make a statement upon which innocent parties may rely, and the carrier is therefore estopped to deny the receipt of the goods as stated in the bill." (Syl. ¶ 2b.) In the second opinion in that case, the effect of a Missouri statute relating to bills of lading was considered, and the rule in Kansas was held to prevail in that state also by force of the statute, the bill of lading having been issued there. Although that statute is not invoked in this case, it will be presumed that the law in Missouri is the same as in Kansas.

It is unnecessary to re-state the arguments or refer further to the authorities upon which the rule is established by the decisions referred to, which invests the innocent holder of a bill of lading with rights not available to the original shipper. Having been fully considered and approved, the rule is adhered to.

No material difference in principle is discovered between a case where a bill of lading comes into the hands of a banker who has paid a draft drawn against the shipment, as in the Hutchings case, and a case where the commodity is bought by an innocent holder to whom the bill is transferred in the usual course of business. Nor is there any difference in the legal consequences flowing from a bill issued without the receipt of the goods at any time, and one issued before the

goods are received, provided a loss falls upon the transferee in the usual course of business as a direct consequence of the misstatement.

Upon the question of damages it is sufficient to follow the usual rule that "a party entitled to recover on the breach of a contract should be allowed such damages as are the natural, direct and proximate result of the breach." (*George v. Lane,* 80 Kan. 94, syl. ¶ 1, 105 Pac. 15.)

As was said in *Savings Bank v. A. T. & Santa Fé Rld. Co.,* 20 Kan. 519:

"The custom of grain dealers is to buy of the producer his wheat, corn, barley, etc., then deliver the same to a railroad company for shipment to market. The railroad company issues to the shipper its bill of lading. The shipper takes his bill of lading to a bank, draws a draft upon his commission merchant, or consignee, against the shipment, and attaches his bill of lading to the draft. Upon the faith of the bill of lading, and without further inquiry, the bank cashes the draft. . . . A mode of business so beneficial to so many classes, ought to receive the favoring recognition of the law to aid its continuance; and the later decisions have gone very far to strengthen the *quasi* negotiability of bills of lading, independent of any statutory authority. . . . When issued, the parties issuing them [bills of lading] have the knowledge that they may and probably will be used with commission merchants, or at some bank, to obtain advances of money. In the most of cases, this result is almost certain to follow." (pp. 522-524.)

Again, it was said in *Weber v. Railway Co.,* 69 Kan. 611, 77 Pac. 533:

"It is a well known commercial usage for shippers to make drafts on their consignees with bills of lading attached and obtain the amounts drawn for at a bank before the receipt of the grain at its destination." (p. 615.)

This usual and ordinary course of business, thus known and recognized by shippers, carriers and consignors, affords sufficient information to the parties

Harold v. Railway Co.

that a breach of the undertaking to deliver the goods in a reasonable time will result in such losses as may arise from depreciation in the market value of the commodity carried, since that is the ordinary and natural result of the default of the carrier. This is the measure of damages where there is an unreasonable delay in the shipment of live stock. (*Railway Co. v. Fry,* 79 Kan. 21, 98 Pac. 205.)

In addition to the depreciation in market value, there was a recovery for the value of corn lost in transit, and an attorney's fee of $50 was therefore allowed to the plaintiff under the provisions of section 7107 of the General Statutes of 1909, and the stipulation "that if the plaintiff was entitled to recover attorney's fees, $50 would be a reasonable amount." The defendant objects to the fee on the ground that no demand in writing was made thirty days before suit, as required by the statute; and also upon the ground that the statute is inoperative as applied to interstate shipments, since the congress has exercised its paramount authority over the subject in the enactment of the Hepburn law, especially in section 20, known as the Carmack amendment. (Part 1, 34 U. S. Stat. at Large, ch. 3591, § 7, p. 593.)

It was admitted at the trial "that demand was made by the plaintiff of the defendant on this claim December 23, 1910." This appears to obviate the first objection. While the statute requires the demand to be made upon the agent of the station at which the grain was shipped, the admission of a demand upon the company in the terms quoted is construed to admit that the demand was made of the proper agent.

The objections based upon federal regulation of interstate commerce remain to be considered. In an action under the statute before referred to it was held:

"The statute cited is a measure in exercise of the police power of the state, and does not assume to regulate commerce between the states. It is not, therefore, repugnant to the commerce clause of the federal con-

stitutiön, and, being a police regulation, the provision contained in it allowing an attorney's fee for the successful prosecution of a case within its terms is constitutional." (*Railway Co. v. Simonson*, 64 Kan. 802, syl. ¶ 2, 68 Pac. 653.)

Before that decision this court had held in several cases that the statute allowing an attorney's fee in actions against railroad companies to recover damages from fire was valid. In one of these cases (*Railroad Co. v. Matthews*, 58 Kan. 447, 49 Pac. 602) it was said that the imposition of an attorney's fee in such cases was in the nature of a police regulation, and within legislative power. That decision was affirmed in *Atchison, Topeka &c. Railroad v. Matthews*, 174 U. S. 96, citing and approving *Gulf, Colorado & Santa Fe Rly. v. Ellis*, 165 U. S. 150. In the Ellis case a statute of Texas allowing an attorney's fee to plaintiffs in actions against railroad corporations on claims not exceeding $200 for personal services, overcharge, or lost or damaged freight or stock killed was held valid. In another action under the Texas statute the allowance of an attorney's fee was considered. The contention was that the statute was in conflict with the federal constitution and acts of congress regulating commerce. It was said in the opinion:

"Manifestly, the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable as 'costs of suit.' So far as it goes, it imposes only compensatory damages upon a defendant who, in the judgment of the legislature, unreasonably delays and resists payment of a just demand. The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other, it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary. The allowance of ordinary costs of suit to the prevailing party rests upon the same principle." (*Missouri, Kansas & Texas Ry. v. Cade*, 233 U. S. 642, 651.)

In *Missouri, Kansas & Texas Ry. Co. v. Harris*, 234 U. S. 412, the Texas statute was again examined in the

Harold v. Railway Co.

light of the constitutional and statutory regulations of commerce, and it was held not to be obnoxious to either. Reference was made to the fact that the act related only to the collection of claims not .exceeding $200, and having a broad sweep which only incidentally includes claims arising out of interstate commerce it could not be held to be a burden upon it. The opinion quotes (p. 419) from one delivered by Justice Harlan in *Reid v. Colorado,* 187 U. S. 137:

"It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested. This court has said—and the principle has been often reaffirmed—that 'In the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together." (p. 148.)

While some points of difference between the Texas statute and the Kansas statute now under consideration are suggested, it is difficult to formulate any distinction in principle that would make the provision relating to an attorney's fee in one valid and the other invalid. True, claims to which the Texas statute applies are limited in amount, but it can not be that the imposition of an attorney's fee reasonably graduated to the amount of a claim is a burden on commerce where the claim is large, and not a burden where it is small. The carrier has as good a right to resist payment on the ground of injustice of a claim under $200 as one over that amount. The Texas statute limits the fee to $20, evincing a legislative purpose to observe a just relation to the maximum amount that might be recovered. Under our statute the fee must be reasonable, and in administering the law courts will have a just regard to the amount—the payment of which is unjustly delayed for the prescribed statutory period

after notice and demand. The Kansas statute relates only to the shipment of grain, seeds and hay. The Texas statute is broader and covers freight losses generally. This difference does not appear sufficient to make an allowance of an attorney's fee a burden upon interstate commerce in prosecutions for damages under one statute and not under the other. The provisions of our statute for an attorney's fee having been heretofore held valid by the court, and the principle being sanctioned by the controlling federal decisions cited, it follows that there was no error in the allowance made in this case.

The judgment is affirmed.