No. 19,249.

THE E. G. RALL GRAIN COMPANY, *Appellant*, v. THE MISSOURI PACIFIC RAILWAY COMPANY et al., *Appellees*.

No. 19,306.

THE E. G. RALL GRAIN COMPANY, *Appellee*, v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*, and THE KEMPER GRAIN COMPANY et al., *Appellees*.

No. 19,489.

THE E. G. RALL GRAIN COMPANY V. THE MISSOURI PACIFIC RAILWAY COMPANY et al., *Appellees*, and THE KEMPER GRAIN COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

SALE OF WHEAT—*False Bill of Lading—Innocent Holder—Conclusive Against Railroad Company—Liability of Those Responsible for the Fraud.* In the purchase of a car of wheat by a grain dealer a bill of lading with a draft attached was forwarded to a bank and was paid and taken up by the dealer. The grain dealer then sold the car of wheat and procured the railway company to issue an exchange bill of lading showing a much larger quantity of wheat than was in the car or shown by the original bill of lading, and to the exchange bill of lading a draft was attached which covered the excess. The agent of the railway company had the original bill of lading before him when the exchange bill of lading was issued, and the grain dealer also knew of the excess and collected for it from the purchaser. When the false bill of lading with the draft attached was presented to the plaintiff to which the wheat was sold it paid the draft and took up the bill of lading. Later the car arrived, and although the plaintiff had then learned of the shortage of grain in the car it paid the freight on the car and accepted and used so much of the wheat as was in the car and then sued the railway company which issued the false bill of lading, and the grain dealer which procured it to be issued, to recover for the shortage of wheat and also for the freight which plaintiff had been required to pay to obtain the wheat actually shipped. *Held*, that the plaintiff is entitled to recover from the railway company and also from the grain dealer for the loss resulting from the issuance of the false bill of lading which includes

not only the shortage of wheat but also the freight charge paid by plaintiff, *and it is further held,* that the railway company is entitled to a judgment against the grain dealer for the amount which it is required to pay on the judgment rendered against it.

Appeals from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge.  Opinion filed March 6, 1915.  Modified.

*Chester I. Long,* and *A. M. Cowan,* both of Wichita, for the Rall Grain Company.

*W. P. Waggener,* and *James M. Challis,* both of Atchison, for the Missouri Pacific Railway Company.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the Kemper Grain Company.

The opinion of the court was delivered by

JOHNSTON, C. J.: These are appeals taken in an action begun by The E. G. Rall Grain Company, doing business at Fort Worth, Tex., against The Missouri Pacific Railway Company and The Kemper Grain Company, of Wichita, Kan., to recover $574.55 damages by reason of its reliance upon the recitals of a bill of lading which was alleged to have been carelessly and fraudulently issued by The Missouri Pacific Railway Company at the instance of The Kemper Grain Company.

There is no material dispute about the facts and, briefly stated, they appear to be that on November 20, 1912, the railway company issued, at La Crosse, Kan., its shipper's order bill of lading for a car of wheat to H. S. Fish, showing weight 64,690 pounds, consignee H. S. Fish, Wichita, Kan., with provision to notify The Kemper Grain Company at that point; that the bill of lading was sent to a bank in Wichita with draft attached; that the Kemper company paid the draft and took up the bill of lading; that the Kemper company sold the car to L. H. Harrod, who was doing business as Harrod & Company and also as The

Harrod Grain Company, so that he might apply it on a contract he had with the Rall company, and on November 23, 1912, before the arrival of the car in Wichita, the Kemper company procured the railway company to sign and issue a bill of lading showing the weight of the car as 110,000 pounds, notwithstanding that when signing this latter bill of lading the clerk of the railway company had before him the original bill of lading showing the weight to be 64,690 pounds; that the Kemper company, knowing the actual weight, collected from Harrod for the car on the basis of 110,000 pounds; that Harrod sold the car to the Rall company, f. o. b. Sherman, Tex., and sent the bill of lading with draft for $1425 attached, which was taken up by the Rall company on November 27, 1912; and that the Rall company sold the wheat to a mill company at Sherman, Tex., where the car arrived on December 2, 1912, which company surrendered the bill of lading on January 8, 1913, and paid the whole freight bill of $203.21 and demurrage charges of $28. It further appears that Harrod disappeared from Wichita about December 24, 1912, and on March 12, 1913, was adjudged an involuntary bankrupt; that on December 27, 1912, the Kemper company requested destination weights of the car of the Rall company and was answered by the Rall company that it would unload the car to the account of the Kemper company; and that the Kemper company disclaimed any relations with the Rall company. It also appears that the Rall company had notice of a shortage in the car after the draft was paid but before the wheat was unloaded. The Kemper company, in its answer, admitted that Harrod was entitled to a credit of $528.90 because of the overdraft on the car in question, and that it was then indebted to him for a balance of $474.96. Charles A. Baldwin, as trustee for the bankrupt Harrod estate, intervened by cross-petition and counterclaim and prayed judgment against the Kemper company for the $528.90 overdraft on the car and also for the $575.05,

the amount of the claim against the estate presented by the Rall company. On the trial of the case it was in evidence that all the transactions in connection with the car were according to the usual custom of grain dealers, and also that the bill issued was. " a clean bill of lading," which was explained as differing from one bearing the notation "shipper's load and count," a phrase which meant that the shipper had weighed the car and the railroad company had not, and E. G. Rall, president of the Rall company, testified that it was because of this fact and that the bill of lading bore the indorsement of the Kemper company that he accepted it. The court found and adjudged that the Rall company should recover against The Missouri Pacific Railway Company the sum of $371.34 but refused any award for the freight paid on the car, amounting to $203.21, and also refused judgment against the Kemper company; that The Missouri Pacific Railway Company should recover against the Kemper company $371.34; that Charles A. Baldwin, trustee, should recover against the Kemper company $103.62 and interest; that the Rall company, The Missouri Pacific Railway Company and the Kemper company should each bear one-third of the costs of the action; and that the judgment rendered should be without prejudice to any right of the Rall company to proceed against Harrod's estate for $203.21, the freight paid on the car. From this judgment all parties, save Charles A. Baldwin, trustee, appeal and allege error.

It is insisted by the Rall company that it should have recovered $203.21, the freight paid, against The Missouri Pacific Railway Company, and also that it should have recovered the full amount against the Kemper company. It is contended by the railway company that the judgment in favor of the Rall company against it was erroneous, and by the Kemper company that the court erred in giving judgment against it in favor of The Missouri Pacific Railway Company and Charles A.

Baldwin, trustee. Each company complains of the adverse judgment as to costs.

First, as to the complaint of the Rall company that the court erred in refusing it any allowance against the railway company for the freight which it paid upon the car. It was negligence in the railway company to issue a shipper's order bill of lading representing that the car contained 110,000 pounds of wheat when it only contained 64,690 pounds. Through the negligence in issuing the false bill of lading the Rall company was induced to pay the sight draft for $1425. Under the customs of trade and the rules of law such a bill of lading is negotiable and the Rall company had a right to rely on the bill as it was executed and negotiated. The railway company became liable to the party to whom the bill was negotiated in the regular course of business for all damages which are the natural and proximate result of the misrepresentation in the bill of lading. There is no occasion to reopen the discussion of a liability on such a bill of lading as it has received full consideration in a number of cases and there is nothing in the notations upon or in the terms of this bill to take it outside of the authorities. (*Savings Bank v. A. T. & Santa Fe Rld. Co.,* 20 Kan. 519; *Railway Co. v. Hutchings,* 78 Kan. 758, 99 Pac. 230; *Hutchings v. Railway Co.,* 84 Kan. 479, 114 Pac. 1077; *Harold v. Railway Co.,* 93 Kan. 456, 144 Pac. 823.) The freight charge was an incident of the shipment and followed it to destination. The Rall company purchased the wheat f. o. b. Sherman, Tex., and was entitled to have it delivered there free of all charges, including freight. Before the Rall company could obtain the wheat it was compelled to pay the freight charge, and the fact that the demand was excessive was due to the fault of the railway company and the Kemper company. The representation made by them was that the car contained 110,000 pounds, and to get possession of the car and of the wheat contained in it the Rall company was obliged

to pay $1425 to the bank and $203.21 to The Missouri, Kansas & Texas Railway Company. It is said that the Rall company had notice that there was less wheat in the car than was represented by the bill of lading before the freight was paid, and that therefore it was not warranted in paying or in asking a recovery of the freight. The draft had been paid to the bank long before notice of the shortage was received and the car was held by the carrier's lien. To avail itself of so much wheat as had been shipped and thus reduce the loss as much as possible it was·necessary for the Rall company to pay the freight charge. If it had refused to accept the car it could, of course, have recovered the full amount paid, but the damage was greatly reduced through the action of the Rall company in accepting the wheat actually shipped and giving a proportionate credit to the parties guilty of the wrong. It is the duty of one injured by the fault of another to use reasonable efforts to lessen the resulting damages, and so the Rall company was justified in taking the wheat, which was worth $1053.66, thereby reducing the amount of damage to $574.55, which included the shortage in the wheat and the freight that the Rall company was required to pay in order to get the wheat. (*Lumber Co. v. Sutton*, 46 Kan. 192, 26 Pac. 444; *Frick Co. v. Falk*, 50 Kan. 644, 32 Pac. 360; *Holly v. City of Neodesha*, 88 Kan. 102, 127 Pac. 616; *Maddux v. Telegraph Co.*, 92 Kan. 619, 141 Pac. 585; 37 Cyc. 1757.) The freight item was the proximate result of the negligence of the railway company and it should have been added to the award of $371.34 made against that company, increasing the· amount of recovery to $574.55.

There is complaint because judgment was not rendered in favor of the Rall company against the Kemper company, and also, by the latter, that the railway company was allowed a recovery against it for $371.34. While the Kemper company had no direct relationship

with the railway company it did contribute towards the issuance of the false bill of lading and became jointly liable for the resulting damages. It represented to the railway company that the car contained 110,000 pounds of wheat when it knew that it contained a less quantity. The Kemper company prepared the false bill of lading, signed its name thereto, and then presented it to the railway company for execution. It knew that a draft would be attached to the bill and that the purchaser would be compelled to pay the excessive amount. There is testimony, too, that the Kemper company raised the amount in the bill of lading because it was suspicious of Harrod, to whom the grain was being shipped, and did not consider him to be strong and reliable. When the bill of lading was raised the Kemper company knew that a sight draft would be issued on the amount stated by it in the bill of lading and that the purchaser would be deceived and suffer loss through the misrepresentation. Even if no benefit had accrued to the Kemper company through the misrepresentation it would nevertheless be held liable for the loss. The president of the Rall company testified that he relied on the indorsement of The Kemper Grain Company, which he regarded to be a responsible dealer. One who makes a representation known to be untrue, and which he has reason to believe will be relied and acted upon by others to their loss, is liable for the loss sustained, although he has no direct interest in the transaction and receives no consideration or benefit from it. (*Carpenter v. Wright,* 52 Kan. 221, 34 Pac. 798; *Hewey v. Fouts,* 92 Kan. 268, 140 Pac. 894.) This rule was applied in *Stoney Creek Woolen Co. v. Smalley,* 111 Mich. 321, 69 N. W. 722, where it was said:

"Where one deliberately gives another a false statement in writing, knowing the purpose for which it is to be used, which that other uses to deceive a third party, he is a joint wrong-doer, and must be held responsible for the consequences which follow. Smalley can not defend upon the ground that he received no benefit from the fraud." (p. 324.)

(See, also, *Skeels v. Porter*, [Iowa, 1914] 145 N. W. 332; *Weber v. Weber*, 47 Mich. 569, 11 N. W. 389; Bishop on Noncontract Law, § 315; 20 Cyc. 71.)

The Rall company was therefore entitled to a judgment against The Kemper Grain Company for the full amount of the loss sustained, namely, $574.55, and because of its action in inducing and causing the railway company to issue the false bill of lading and thus incur a liability the railway company is entitled to a judgment for the amount against the Kemper company. The fact that the Rall company, at a later time, presented a claim in the bankruptcy court and endeavored to recoup its loss to some extent from the Harrod estate does not prevent a recovery in this proceeding. As the Rall company is entitled to a full recovery in the action it was also entitled. to a judgment for its costs against the other parties, and the costs of the litigation should be equally divided beween the railway company and the Kemper company.

The judgment of the district court will be modified to the extent herein indicated, and to that end the case will be remanded to the district court.