No. 20,201.

THE WESTERN SILO COMPANY, Limited, *Appellant,* v. M. V. CARTER, *Appellee.*

SYLLABUS BY THE COURT.

1. PLEADINGS—*Amendment—Judicial Discretion.* The allowance of an amendment to a pleading at the opening of a trial, under which a party was permitted to set forth the amount of one element of damages which he had sustained because of facts already pleaded, is not an abuse of discretion nor a ground of reversal, especially where the court offered to give the objecting party a continuance of the case in order to make preparation to meet the new matter, which offer was refused.

2. CONTRACT—*Sale of Silo—Breach of Contract—Defective Silo—Delay in Delivery—Elements of Damages.* Where a person agrees to make and sell a silo to another to be used and filled with ensilage from a growing crop and to deliver the silo to the buyer on August 1 of that year or at the earliest convenience of the seller, but which was not delivered until September 20 following, although the seller could have conveniently shipped it to the buyer on August 5, and where the silo delivered was defective in several respects and the result of the delay in delivering it was the ripening and deterioration of the crop planted by the buyer to be placed in the silo, the seller is liable not only for the difference in value between the kind of silo purchased and the defective one delivered, but also for such damages as are the reasonable and natural consequences of the breach of the contract; and the deterioration of the crop grown to be placed in the silo because of the delay may reasonably be supposed to have been in the contemplation of the parties when the contract was made, and for this loss the seller is liable.

3. SAME—*Sale of Silo—Defective Parts—Waiver of Notice of Defects.* In the contract the buyer agreed that if upon receipt of the silo any parts were found to be defective or missing he would at once notify the seller in writing and give him reasonable time to replace the parts and that when such replacements were made the seller's responsibility would cease. The buyer did not give the seller written notice of the defects until January 18 following the delivery, nor was any notice given except to the local agent who made the sale. After the notice was given the seller entered into negotiations with the buyer in regard to remedying the defects and expressed a willingness to supply what was lacking and defective. *Held,* that the delay of the buyer in giving the written notice was waived by the seller.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed June 10, 1916. Affirmed.

*J. Harvey Frith, Gilbert H. Frith,* and *L. B. Kellogg,* all of Emporia, for the appellant.

*W. L. Huggins,* and *O. T. Atherton,* both of Emporia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Western Silo Company against M. V. Carter to recover the contract price of a wooden silo, sold and delivered to Carter. The defense was that the plaintiff had failed to comply with its contract and in a cross-petition defendant asked for damages sustained by loss of crops on account of the plaintiff's delay in shipping the silo and also on account of defects in it. On June 10, 1912, the defendant had given his order, written upon one of the blanks furnished by the company's agent, calling for a silo sixteen feet in diameter, made of yellow pine and priced at $238, to be shipped by August 1, or at the plaintiff's earliest convenience. The order provided that the plaintiff was to be notified in writing of any missing or defective parts upon receipt of the silo, that it should have a reasonable time in which to replace such parts and that when such replacements were made its responsibility would cease. It appears that the defendant, relying on the contract to deliver the silo, had planted a crop for ensilage and under the direction of Wingert, the plaintiff's agent, had built a foundation upon which to erect a silo of the size purchased from the plaintiff. The silo was not received by the defendant until the middle of September, although it seems the plaintiff could have shipped it by August 5. The defendant noticed when the shipment arrived that the materials were defective, but with the assistance of the agent he undertook to place the silo upon the foundation and it was then found that there were three staves lacking so that it was too small for the foundation, that the guy rods were too short, that the hoops did not fit, that the staves did not join tightly and that there were knot holes in the material. It appears that while the defendant was waiting for the silo to arrive, his crop, which had already ripened, dried up to such an extent as to reduce its value as ensilage about fifty per cent, but notice of this was not given to the plaintiff at the time of delivery.

The attention of the agent was called to the defects, but instead of waiting longer for the delivery of staves from the plaintiff's factory at Des Moines, the defendant secured some extra ones in Emporia and endeavored to make the silo large enough to fit his foundation. After the crop was placed in the silo, the defects in the latter caused a loss of about forty tons of ensilage alleged to be of the value of about $225. The first written notice given by the defendant to the plaintiff was in a letter written January 18, 1913, after which considerable correspondence on the matter was had between them. At the trial the plaintiff demurred to the cross-petition of the defendant. The court overruled the demurrer, but permitted the defendant to amend his cross-petition instanter, so as to set forth more fully the nature and extent of the loss resulting from the delay in shipping the silo. He was confined to proof of such damages, the court excluding all testimony of damages to ensilage after it was put in the silo. The court offered to permit a continuance at the defendant's cost on account of the amendment, but the plaintiff objected to a continuance and elected to go to trial at that time. The defendant recovered judgment for $60, this being the difference between the damages which the jury found he had suffered, amounting to $175, and the reasonable value of the silo as shipped, which the jury found to be $115.

The plaintiff complains of the ruling of the court permitting an amendment of the defendant's answer and cross-petition in respect to the damages resulting from the delay in the delivery of the silo. After the jury had been impaneled a question arose as to whether the defendant might offer evidence to prove damage to the ensilage after it had been placed in the silo, and the court held that such evidence was not admissible. Application was then made by the defendant for permission to amend his pleading as to the damage to his crop resulting from the delay in the arrival of the silo. It was already alleged in his pleading that at the time of ordering the silo he informed the plaintiff's agent, making the sale, that he had planted a crop especially for ensilage purposes, and must have the silo about August 1, and further that the crop was greatly damaged because it was not delivered at the agreed time, but he had not stated the amount of the damage to his crop because

of this delay. The amendment was made by interlineation and it only added: "That said crop had deteriorated in value in that at the time said silo should have arrived if shipped within a reasonable time under said order, it would have been worth $700 while at the time said silo actually arrived, said crop was worth not to exceed $360." The allowance of the amendment was well within the discretion of the trial court. To protect the rights of the plaintiff in case it was not prepared to meet the evidence as to the extent of the damage resulting from the delay, the court offered to continue the case, but the plaintiff refused this offer and insisted on proceeding with the trial at that time. Manifestly the plaintiff has no cause to complain of the amendment.

The principal contention in the appeal is that the defendant was not entitled to a reduction in the price of the silo because of the defects in it, nor to any damages which resulted from the delay in the delivery of the silo. It is first contended that the defendant failed to give the plaintiff notice of the defects promptly upon discovering them, as he had agreed to do, and that therefore he could not rely on the defects as a defense. In the order for the silo the defendant stated that if upon its receipt he found parts of it to be defective or missing he would at once notify the plaintiff in writing and give it a reasonable time to replace such parts. The plaintiff's agent had notice of the defects and missing parts and tried to help the defendant to overcome them. On account of the lateness of the season and the rapid drying up and deterioration of the corn, staves were obtained in the vicinity. The lapse of time necessary to have sent to Des Moines where the plaintiff's factory was located to obtain staves would have greatly lessened the value of the crop planted for ensilage and correspondingly increased the resulting damages. Acting upon the suggestion of the agent, the defendant undertook to make the best out of the material received and to reduce the constantly accruing damages. Where a thing sold does not meet the conditions of the contract between the parties, and the defect is one that it is practicable to repair, it is the duty of the purchaser to take reasonable steps to have the repairs made and do what he reasonably can to diminish the damages to which the seller will be liable. (*Lumber Co. v. Sutton*, 46 Kan. 192, 26 Pac.

444; *Town Co. v. Leonard,* 46 Kan. 354, 26 Pac. 717, 26 Am.
St. Rep. 101; *Frick Co. v. Falk,* 50 Kan. 644, 32 Pac. 360;
*Brown v. Cairns,* 63 Kan. 584, 66 Pac. 639.)   It is said that
Wingert was only a selling agent and had no authority to act
for the plaintiff in supplying the missing staves or in over-
coming defects.   He seems to have been vested with authority
beyond that of selling the silo, as the plaintiff's letter stating
that the silo had been shipped recited that "all papers in con-
nection with this shipment have been forwarded to Samuel
Wingert, Emporia, Kan., with instructions to turn over to
you," and in that letter it was also stated that "if there is an
actual shortage, or defective part, it will be replaced if settle-
ment is made promptly, accompanied by full explanation of
such shortage or defective parts."   The defendant, it seems,
wanted to have the shortage and defective parts made good be-
fore making a settlement for the silo.   Assuming, however,
that Wingert had no authority to see that a complete silo of
the kind contracted for was delivered to the defendant or to
provide against the obvious defects in the silo that was shipped
to the defendant, and also that the stipulation that written
notice of defects or missing parts should be given "at once"
required an earlier notice than the one given by the defendant
in January following the delivery of the silo, we still see no
serious objections to the recovery of damages by the defendant.
The express purpose of the notice was to enable the plaintiff
to supply the missing or defective parts and to give it a reason-
able time in which to do it.   Upon receiving the notice that
was given in January, the plaintiff raised no question about
the lateness of the notice, but stated in reply: "Advise me in
regard to this matter, and we will figure out how many staves
you will have to have, and will furnish them to you free of
charge."   In an exchange of letters regarding the matter,
which continued until August 20, 1913, the plaintiff stated
that while it did not wish to assume the expense of sending a
man to the defendant's place to inspect the silo, it did, in a
number of letters, indicate a willingness to supply the neces-
sary staves and make good the defects upon receiving definite
information as to what was lacking or defective.   If there was
unnecessary delay in giving the notice it was certainly waived
by the plaintiff.   As we have seen, the purpose of the notice

was to furnish the plaintiff reasonable time to replace the parts, and when it did receive notice it negotiated with the defendant about a year after the time for delivery in regard to replacements of parts, and certainly it had a reasonable time in which to make such replacements. The defendant did not ask for a rescission nor undertake to turn the silo back upon a warranty, but accepted it with the defects and asked damages because the silo was not up to the standard of the one which the plaintiff agreed to furnish him. He accepted the material as it was and asked plaintiff to pay the damages which directly resulted from the breach of its contract. This he could do. Plaintiff insists that the damages resulting from the delay and the drying up of the crop are special in their nature and not recoverable unless the plaintiff had knowledge at the time that the contract was made of the circumstances which might occasion loss in case of delay. It is well known that a silo is designed and used to preserve green fodder and not for the storage of that which is ripe and dry. The defendant's silo was purchased for that use and to be delivered at a fixed time. The plaintiff must be held to have been acquainted with the seasons and stages of vegetation in the growing season and it must have known that ordinarily corn becomes ready for use as ensilage in August and in this climate frequently ripens and dries up long before the time the silo was delivered to the defendant. Plaintiff also knew that silos are not made in every county or obtainable in any local market. It could not help but know that the damages claimed by the defendant are those which naturally follow a delay at the season of the year when the delivery was made, and such as we may reasonably infer were within the contemplation of both parties when the contract was made.

In *Lumber Co. v. Sutton,* 46 Kan. 192, 26 Pac. 444, as in this case, the material was purchased for a special purpose and to be delivered at a stated time, but it was not delivered at the time agreed upon, and when delivered did not comply with the contract of purchase. The defendant in that case, as here, accepted the material and undertook to lessen the damages for which he intended to hold the plaintiff liable. It was held that the plaintiff was responsible for such damages as were the direct result of his failure, although the damages exceeded

the difference between the contract and market prices.   It was said:

"Under special circumstances, as where merchandise is purchased for a particular purpose, and to be delivered at a specified time, and where it. can not be purchased in the market at the place of delivery, and these facts are known to the vendor, the general rule of damages would be inadequate to compensate the vendee for a delay or a non-delivery of the merchandise, but in such a case he would be entitled to recover the actual loss directly and naturally resulting from the default of the vendor." (Syl. ¶ 3.)

The same view was taken in *Skinner v. Gibson,* 86 Kan. 431, 121 Pac. 513, where many other cases are cited, and in stating the rule it was said:

"It is a general rule that damages may be recovered when they arise naturally—that is, according to the usual course of things—from the breach of a contract, or are such as may reasonably be supposed to have been in the contemplation of the parties at the time they entered into it." (Syl. ¶ 1.)

The damages allowed herein appear to be the reasonable and natural consequence of the breach of the contract and may reasonably be supposed to have been in the contemplation of both parties when they entered into the contract.

Although complaint is made of the instructions of the court they fairly presented the issues in the case to the jury.   The order required the shipment of the silo on or before August 1, 1912, or "at your earliest convenience."   In one of the instructions the court properly advised the jury that the term "at your earliest convenience" used in the contract, meant that it should be shipped on August 1, or within a reasonable time thereafter, and that what was a reasonable time should be determined from the evidence and the circumstances of the case, including the use intended to be made of the silo or the material purchased.   We find nothing substantial in the objections to other instructions nor in the rulings on the admission of evidence.

The judgment is affirmed.