No. 24,605.

C. V. BROWNE, *Appellant*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. INTERSTATE COMMERCE—*Date of Bill of Lading No Part of Description of Goods Shipped—Liability of Carrier to Innocent Holder of Misdated Bill of Lading.* The dating of an interstate shipper's order bill of lading is not part of the description of the goods mentioned therein, and the federal act of June 5, 1916 (39 U. S. Stat., ch. 415, p. 538), has not changed the rule announced in *Atchison & Topeka Ry. v. Harold,* 241 U. S. 371, 60 Law Ed. 1050, touching an innocent holder's right of action against the issuing carrier for misdating such order bill.

2. SAME—*Demurrers to Defenses.* Other matters pleaded in defense considered, and *held,* not subject to demurrer.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed June 9, 1923. Affirmed.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellant.

*T. M. Lillard, Bruce Hurd,* and *O. B. Eidson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action for damages sustained through his reliance on erroneous datings on four shipper's order bills of lading issued by defendant.

The plaintiff, a grain dealer of McKinney, Texas, alleged on October 18, 1920, he bought 10,000 bushels of wheat from the Ed Past Grain Company of Denver, Colo., at $2.36 per bushel, to be shipped on or before November 2, 1920, but the time was extended until November 9, 1920. Plaintiff gave the grain company instructions to ship the wheat to Whitewater, Texas, via defendant's railway and another. Separate shipper's order bills of lading for each of four cars of this wheat were issued at Denver by the defendant railroad company. On October 30, 1920, plaintiff sold 5,000 bushels of this wheat to the Gladney Milling Company, of Sherman, Texas, shipment to be made by November 9, 1920, and billed to Sherman. The Ed Past Grain Company presented to plaintiff four sight drafts with the four shipper's order bills of lading attached, each of which recited receipt of a carload of wheat by defendant. Plaintiff paid these drafts and received the bills of lading. He alleged that he relied on the recitals in the bills of lading, which had been signed

Browne v. Railroad Co.

by defendant's agent, and that he would not have paid the drafts and would not have taken up the bills of lading had they not shown that the cars were shipped by November 9, 1920. Plaintiff then tendered the four bills of lading to the Gladney Milling Company pursuant to his sale of 5,000 bushels of wheat to that company, but the latter refused to accept them and refused to accept the four cars of wheat, on the ground that the bills of lading were incorrectly dated and that the wheat had not been shipped as represented thereon, or by November 9, 1920, and were therefore inapplicable on plaintiff's contract of sale with the Gladney Milling Company. Consequently, plaintiff had to sell the wheat at a loss, by which he sustained damages. The alleged inaccuracies in the bills of lading were—

On B/L for car G. N. #17527, it was recited:

"Received at Peavey, Idaho, 10/25/20. Stop at Denver for federal inspection. Issued at Denver, Colo., in lieu of B/L issued at Peavey, Idaho, 10/25/20 Destn. unchanged."

Plaintiff alleged that this order bill should have shown that it was issued at Denver, Colo., November 22, 1920, in exchange for bill of lading issued at Ogden, Utah, November 19, 1920.

On B/L for C. P. #72066, it was recited:

"Received at Buhl, Idaho, 11/5/20. Stop at Denver for Fed. Inspection. Issued at Denver, Colo., in lieu of B/L issued at Buhl, Idaho. Destination unchanged."

Plaintiff alleged that this order bill should have shown that it was issued at Denver, Colo., November 24, 1920, in exchange for bill of lading issued at Ogden, Utah, November 19, 1920.

On B/L for M. C. #62632, it was recited:

"Received at Buhl, Idaho, 11/5/20. Stop at Denver for Federal Inspection. Issued at Denver, Colo., in lieu of B/L issued at Buhl, Idaho, Destn. unchanged."

Plaintiff alleged that this order should have shown that it was issued at Denver, Colo., November 24, 1920, in exchange for bill of lading issued at Ogden, Utah, November 19, 1920.

On B/L for W. A. B. #75411, it was recited:

"Received at Buhl, Idaho, 11/2/20. Stop at Denver for Federal Inspection. Issued at Denver, Colorado in lieu of B/L issued at Buhl, Idaho, 11/2/20 Destination unchanged."

Plaintiff alleged that this order bill should have shown that it

was issued at Denver, Colo., November 22, 1920, in exchange for bill of lading issued at Ogden, Utah, November 19, 1920.

Plaintiff also alleges that before he learned that the datings on the bills of lading were incorrect and that the shipments had not been made at the times therein recited, Ed Past, trading as the Ed Past Grain Company, became insolvent and was and is a fugitive from justice, and—

"That said damage to plaintiff was caused by the fault of defendant in issuing said incorrect order bills of lading which were negotiated to plaintiff for value and which were relied on by plaintiff, he having no knowledge that the recitations therein contained were not true, when he became the lawful holder thereof."

The defendant answered, admitting plaintiff's contracts of purchase and sale, but alleging, in substance—

Second: That under the terms of his contract with the plaintiff the Past Company was bound to accept the shipments regardless of dating of bills of lading.

Third: That defendant, at the time its Denver agent signed the bills of lading, had no knowledge of any contract between plaintiff and the Past company, or between plaintiff and the Gladney Milling Company either specific or by reason of custom or usage, and that it did not and could not know that any special reliance would be placed by anyone on the dating of the bills of lading.

Fourth: That if the Denver bills of lading were misdated this was done by the Past grain company who prepared the forms, presenting them to the carrier for signature only; that it was without the scope of authority of defendant's agent to bind the company by signing bills of lading containing any false statements; that such bills described the shipments accurately, stated the weight thereof correctly, and that the shipments were carried through to destination promptly and were fully delivered to the order of plaintiff at destination.

Fifth: That had plaintiff awaited the arrival of the shipments at destination before taking up the drafts he would have been fully informed of the original points of origin of the shipments in Idaho and the dating of the Ogden, Utah, bills by notations on the statements for freight charges which would have been presented to him for payment in usual course. That in any event the plaintiff should have been warned of the probability of misdating of the Denver bills by reason of the late arrival of the bills of lading and shipments.

Plaintiff moved to strike out the most of the matters in defendant's answer summarized above. The motion was overruled. Plaintiff then filed a general demurrer and a special demurrer to the third, fourth and fifth paragraphs of the answer. These demurrers were overruled, and plaintiff appeals, contending that these shipper's order bills of lading having to do with interstate commerce are strictly negotiable.

Since the decision of the United States supreme court, June 5, 1916, in *Atchison & Topeka Ry. v. Harold*, 241 U. S. 371, 60 Law Ed. 1050, reversing our own decision, *Harold v. Railway Co.*, 93 Kan. 456, 144 Pac. 823, it is too clear for comment that these interstate bills of lading under consideration are exclusively governed by federal law, and the Kansas law touching responsibilities arising from their issue is inapplicable. At the time the Harold case was decided, interstate shipper's order bills of lading were not negotiable instruments. Following that decision the congress on August 29, 1916, enacted chapter 415, 39 U. S. Stat. 538 (Fed. Stat. Ann., 1918 Supp. 72; U. S. Comp. Stat. 1916, § 8604 aaa, *et seq.*). This act relates to bills of lading in interstate and foreign commerce. Plaintiff contends that the text and effect of this act is to make shipper's order bills of lading unqualified negotiable instruments. The act does not specifically so declare, although it does clothe them with certain attributes of negotiable instruments—"within the meaning of this act." (§ 3). No specific language in the act can be construed to impose liability on the carrier for an erroneous dating of an order bill of lading. Plaintiff argues that such liability is imposed by section 22, which provides that where a carrier has issued an order bill it shall be liable thereon to the holder thereof who has given value therefor in good faith "relying upon the description . . . of the goods, for damages caused by . . . their failure to correspond with the description thereof in the bill at the time of its issue." It would be an undue extension of the statutory words "description of the goods" to say that the date of shipment of the goods as shown by the bill of lading is part of the description. A description of a carload of goods is a statement or recital of their character, of their sort, kind or species. Thus, a carload of shelled corn, ear corn, yellow corn, or white corn. If the corn was in the ear and the bill of lading said it was shelled, or if the bill said it was white when in fact it was yellow, or if it was in fact a carload of oats or barley, there would be a misdescription for which the car-

rier would be liable in damages to a person who had paid for the
corn in reliance·on the description in the bill of lading. But since
congress specifically defined the matters as to which the carrier
issuing an order bill of lading would be liable, the liability goes no
further. *Expressio unius est alterius exclusio.*

A careful reading of the federal statute discloses no language
which by fair intendment can be said to impose a liability on the
carrier in favor of an innocent transferee of an order bill for in-
accurate or incomplete dating thereof; so the rule announced by the
federal supreme court in the Harold case touching a holder's right
of action against a carrier for the misdating of an order bill of
lading necessarily is still the law. It follows that in so far as plain-
tiff's demurrer involved the question chiefly urged here, the ruling
of the trial court was correct.

The other matters pleaded in defendant's answer, to which the
plaintiff objected and demurred, need but brief attention. The
fact, if correct, that plaintiff was bound to accept the shipments
from the Ed Past Grain Company, may not be a complete defense
to plaintiff's cause of action, but it does raise an issue which may
become important on the measure of damages if any are recoverable
in the action. And whether there was a custom of grain dealers to
rely on the datings of bills of lading, of which the carrier had notice
or was bound to take notice, was also a question of fact, and
therefore not demurrable. The scope of the powers of defendant's
agent at Denver could not be determined by demurrer; and neither
could the matters pleaded in the fifth paragraph of the answer·
summarized above.

The judgment is affirmed.

JOHNSON, C. J. dissenting.

HARVEY, J. (dissenting): The principal object in the passage of
the federal bill of lading act, chapter 415, 39 Statutes at Large,
538, was to make order·bills of lading strictly negotiable. At the
time of the passage of this act it was estimated that more than
$5,000,000 in order bills of lading were handled annually by banks
and commercial houses and much loss had been sustained by reason
of their not being strictly negotiable and various defenses arising
in connection with their risk. (Report No. 847, 64th Congress, 1st
session, House of Representatives; Report No. 149, 64th Congress,
1st session, Senate.) The date and place of origin of a shipment may

be a part of the description of the merchandise and is, in fact, some-
times a vital part of it. In fact, no other good reason suggests
itself for placing the date and place of origin on the bill of lading
except to form part of the description of the merchandise.

HOPKINS, J., joins in this dissent.