**TOHO BUSSAN KAISHA, Limited,**
Plaintiff,

v.

**AMERICAN PRESIDENT LINES,**
Limited, Defendant.

United States District Court
S. D. New York.
June 24, 1957.

The fourth defense, which alleges that the complaint does not state a cause of action, must be stricken as a necessary incident of my denial of defendant's motion to dismiss. It is my conclusion that the complaint states a claim upon which relief can be granted but that it presents issues of fact which cannot be resolved on affidavits.

Plaintiff is a Japanese importer which purchased certain newsprint paper from Trans-America Industries, Inc., an American producer. The entire transaction involved more than half a million dollars. The alleged fraud relates only to payments in the amount of $74,438.30.

The shipments failed to meet the contractual specifications of the plaintiff because they were of assorted sizes, rather than the 64 inch width specified. As a consequence, they were rejected by plaintiff's intended customer and plaintiff has apparently been engaged in extensive litigation with Trans-America, some of whose officers have been subjected to criminal prosecution.

The phase of this transaction which is the subject of the action against this defendant relates to advance payments made under two letters of credit opened by the plaintiff in favor of Trans-America. These letters provided for payment against on-board bills of lading dated on or before January 31, 1952. With respect to bills of lading dated thereafter, payments were to be made only if certain counter-credits had been established in favor of the plaintiff in Japan. These counter-credits were never established, but because the bills of lading were falsely dated January 31, 1952, the bank made the advance payments called for as though the newsprint had been on board on this date.

In the absence of some statutory bar to recovery, there can be no doubt that the complaint does state a claim upon which relief can be granted. It alleges that the representation in the bill of lading was deliberately false and alleges that plaintiff, a person who might foreseeably rely upon the recitation, was damaged by a payment made by its agent

Lazaar Henkin, and Cadwalader, Wickersham & Taft, all of New York City, Lazaar Henkin, Isaac C. Donner, John A. Sullivan, and Jerome Shelby, New York City, of counsel, for plaintiff.

Symmers, Fish, Warner & Nicol, New York City, William G. Symmers, and William Warner, New York City, of counsel, for defendant.

WALSH, District Judge.

This is an action to recover certain payments made under a letter of credit upon bills of lading knowingly predated by the defendant. Plaintiff moves for summary judgment. Defendant moves to dismiss the complaint as failing to state a claim for which relief can be granted and as time barred by the period of limitation fixed in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303 (6). In the alternative, defendant also moves for summary judgment.

All of the motions are denied except that plaintiff is granted summary judgment with respect to the third defense.

in reliance thereon. A fraudulent representation made under such circumstances is actionable. Ultramares Corp. v. Touche, 255 N.Y. 170, 189 et seq., 174 N.E. 441, 74 A.L.R. 1139, see also Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425.

Defendant argues, however, that the exclusive source of its obligation is the Uniform Bills of Lading Act, 49 U.S.C.A. § 81 et seq., and the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. and that it performed its contract of carriage because the shipment was delivered on schedule on the same date as though it had been loaded on or before January 31, it having been merely held on the pier in New York while the vessel made a scheduled shuttle run to Boston and return before sailing for the Orient.

It seems to me that neither of these acts bars a claim against a carrier for a fraudulent misrepresentation occurring before the carriage of goods commenced and not depending upon faulty carriage or some other breach of the contract for carriage. Plaintiff does not claim for breach of contract of carriage. It does not even allege that it was the beneficiary of such a contract. The only contract it refers to is the collateral contract it had with its bank relating to payments under the letter of credit. Cases in which recovery is sought for the non-delivery of goods or for delivery in a faulty condition and in which the recitals in the false bills of lading are significant only as admissions which the carrier is estopped to deny, rather than as the basis of an action for fraud, must be distinguished. Cf. Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 2 Cir., 47 F.2d 878, 74 A.L.R. 1378, certiorari denied 283 U.S. 856, 51 S.Ct. 648, 75 L. Ed. 1462; Switzerland General Ins. Co. of Zurich v. Navigazione Libere Triestina, S.A., 2 Cir., 91 F.2d 960; Jones v.

The Flying Clipper, D.C.S.D.N.Y., 116 F. Supp. 386; Insurance Company of North America v. The S. S. Exminster, D.C., 127 F.Supp. 541.[1]

The one year statute of limitations contained in Section 3 (46 U.S.C.A. § 1303(6)) is by Section 2 (46 U.S.C.A. § 1302) restricted to claims under a contract of carriage.[2] This statute relates to failure of the carrier to perform its contract, not to misrepresentations contained in the contract. It does not limit actions in tort based upon fraudulent misrepresentations made, relied upon and causing damage prior to the loading of the cargo even though they were among the representations contained in a contract for the carriage of goods by sea. Section 12 expressly provides:

"Nothing in this Act shall be construed as superseding any part * * * of any other law which would be applicable in the absence of this Act, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior or to the time when the goods are loaded on * * * the ship." 49 Stat. 1207, 1212, 46 U.S.C.A. § 1311.

Although awkwardly expressed, I believe it intended to preserve common law rights as well as those created by other statutes.

Similarly, the one year statute of limitations is not made applicable by the incorporation of the Carriage of Goods by Sea Act into the bill of lading and its extension therein to the period before the goods are loaded. Plaintiff is not basing its claim upon the bill of lading as a contract. It is not suing as an assignee of the party who agreed to this restriction of the legal time within which to bring an action. As the alleged innocent victim of the fraud between the two contracting parties, its rights to recover the damage caused thereby cannot be limited by the contract between the two tort-feasors.

---

1. It has also been held that the Carriage of Goods by Sea Act relates only to physical loss or damage of the goods. See United Merchants & Manufacturers v. United States Lines, 204 Misc. 989, 126 N.Y.S.2d 560, 562. This was apparently conceded in United States v. Wessel, Duval & Co., D.C., 115 F.Supp. 678, 680.

2. Carriage of goods by sea is defined in Section 1 (46 U.S.C.A. § 1301(e) ) to cover only the period from the time the goods are loaded until discharged.

■■ Neither do the Uniform Bills of Lading Act constitute a bar to the present action. Section 22 of that Act was enacted to extend the rights of innocent purchasers for value of bills of lading by imposing liability upon the carrier for a bill of lading issued by its agent even though for merchandise never received. Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 357–358, 49 S.Ct. 161, 73 L.Ed. 415. It was intended to authorize recoveries by such persons against carriers, notwithstanding defenses which the carrier might have against the shipper, such as lack of authority, actual or apparent, on the part of the carrier's agent. It thus overcame Friedlander v. Texas & Pacific Railroad Co., 130 U.S. 416, 9 S.Ct. 570, 32 L.Ed. 991, in which it had been held that a bill of lading issued fraudulently by a railroad employee for goods never received, was worthless even in the hands of an innocent purchaser for value. The section was extended further to overcome an interpretation which would have prevented an innocent holder for value from recovering for damage due to the nonreceipt of goods as of the date stated in the bill of lading (Browne v. Union Pacific Railway Co., 113 Kan. 726, 216 P. 299).

Section 22 (49 U.S.C.A. § 102) now reads:

"§ 102. Liability for nonreceipt or misdescription of goods

"If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, or upon the shipment being made upon the date therein shown, *for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown,* or their failure to correspond with the description thereof in the bill at the time of its issue." (Emphasis added.)

It is argued that the section, if read literally, does not authorize and therefore impliedly bars recovery in this case because the damage to the plaintiff was not caused by the nonreceipt of the goods, but rather by defendant's concealment of the nonreceipt, or in this case, the nonloading of the goods. It is said that plaintiff did not lose a right because of the failure to load the goods on time, it gained one; it gained a right to resist payment under the letter of credit; and that plaintiff's damage, as alleged, is that the false date on the bill of lading concealed from it the right thus gained.

Such a narrow view of the statute is inconsistent with its history. To begin with, the section had its origin in an attempt to extend not limit pre-existing rights of innocent holders. Next, the 1927 amendment [3] which authorized recovery for damages caused by misdating was accompanied by a committee report, which states in part (S.Rep. 1508, 69th Cong., 2d Sess.):

"The purpose of the amendment is to make the date of a shipper's order bill of lading a material part of the description of the goods so that any holder of the bill of lading, who has relied upon the date and parted with value in the belief that the shipment was made on the date shown, can hold the carrier for *any damages sustained through the misdating of the bill.* (Emphasis added.)

---

3. H.Rep. No. 1214, 69th Cong., 1st Sess. and Sen.Rep. No. 1508, 69th Cong., 2d Sess. accompanied H.R. 12065 which was added to S. 3286 as an amendment. 68

Cong.Rec. 5651–52, 5666–67 (1927). S. 3286, as amended, became Public Law 804 on March 4, 1927. See 44 Stat. 1446, 1450.

\* \* \* \* \* \*

"If section 22 of the bill of lading act is amended in accordance with the provisions in this section, the existing doubt and uncertainty will cease, and the date of an order bill of lading, will be a part of the description of the goods and any holder thereof who has relied upon the same and parted with value while so relying can hold the carrier liable for *any damage he may have sustained through the misdating of the bill.*" (Emphasis added.)

This language was also read on the floor of the House in explanation of Section 22. 67 Cong.Rec. 12758 (1926). It is apparent from these two passages that the bill was intended to protect innocent purchasers for value with respect to *any* damage which they sustained as a result of the misdating of the bill. Even if it be held that the statute does not provide for plaintiff's claim, there certainly was no legislative intent to destroy by implication such a cause of action if it existed at common law.

 The parties appear to overlook another section of the Act which I believe would authorize this action even though there were no other basis for it. Section 41 (49 U.S.C.A. § 121) provides:

"Any person who, knowingly or with intent to defraud \* \* \* issues or aids in issuing \* \* \* a bill which contains a false statement as to the receipt of the goods, or as to any other matter, \* \* \* shall be guilty of a misdemeanor."

Here guilty knowledge is admitted and the probability that the misrepresentation would mislead an innocent person is enough to establish the alternative requirement of intent to defraud. Dell'Aira v. United States, 9 Cir., 10 F.2d 102, 105–106. Plaintiff was one of the class, obviously intended to be protected by this Act. See Olivier Straw Goods Corpora-

tion v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, 134, certiorari denied 278 U.S. 618, 49 S.Ct. 22, 73 L.Ed. 540. Accordingly, it would have been entitled to recover its damages caused by a violation of this section. Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694;. Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874; Howard v. Furst, D.C.S.D.N.Y., 140 F.Supp. 507, 510, affirmed 2 Cir., 238 F.2d 790; Restatement, Torts § 286; Prosser, Torts § 34 (2d Ed., 1955); Thayer, Public Wrong and Private Action, 27 Harvard L.Rev. 317; Notes 48 Columbia L.Rev. 456, and 1090. Once the act of the agent is a tort, the ordinary rules of respondeat superior apply. See Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415. See also The Capitaine Faure, 2 Cir., 10 F.2d 950, 958–959, in which it was said that a vessel could be subject to this section for the acts of its master.[4]

 There remains only the question of whether plaintiff should be granted summary judgment. Defendant has submitted no affidavits in opposition to the motion. It admits that the bill of lading was false and that its agent knew it was false when issued. There is, however, a question of fact as to the plaintiff's reliance on the representation and this issue cannot be resolved by the affidavits of the parties once it is apparent that a real issue exists, particularly where the facts are within the exclusive possession of the moving party. Subin v. Goldsmith, 2 Cir., 224 F.2d 753, 758.

The principal affidavit of the plaintiff is by Yasuhiro Ishii. It is somewhat formalistic, apparently having been drafted by counsel in New York and then sent to Japan where, after a few blanks were filled in, it was executed. This affidavit shows that before the end of January, prior to the payment by its agent under the letter of credit, plaintiff was

---

4. As to corporate criminal responsibility for the acts of its agents within the scope of their authority, see New York Cent. & H. R. R. Co. v. United States, 212 U.S. 481, 494–495, 29 S.Ct. 304, 53 L.Ed. 613; United States v. George F. Fish, Inc., 2 Cir., 154 F.2d 798, 801, certiorari denied 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1639.

aware of Trans-America's noncompliance with contract specifications; that its representative came to New York to investigate and stop payments under the letter of credit; that he arrived here and retained New York counsel on Friday, February 1, 1952, four days before this payment was made. On the morning of Tuesday, February 5, 1952, he and his New York lawyer attempted to stop the New York bank from paying under the letters of credit. At that time the shipments in question were upon the defendant's pier in Jersey City; they had not been loaded.

When plaintiff's representatives called at the bank they were told that Trans-America and its assigns had presented the bills of lading in question and were demanding payment under the letters of credit. They were further told that payment had been refused because two of the bills of lading showed unvalidated alterations in the loading date from February 1 to January 31; that the bills had been re-presented this time properly validated and that the bank was about to make payment. The bank agreed to hold up the payment until that afternoon.

Instead of investigating at the pier, plaintiff's affidavits state, its representatives returned to the bank with a letter requesting it not to pay and with a summons naming the bank as a party defendant in an action for fraud against Trans-America. The bank concluded that it must make the payments unless actually enjoined, and did so.

On the following day, February 6, according to the affidavits, plaintiff's representatives learned from another Japanese firm that the newsprint in question had not yet been loaded. They then visited the pier and saw it there. They obtained an admission as to the falsity of the loading date from defendant's bill of lading clerk but permitted the goods to go forward to Japan. There was no further communication with the defendant until this action was started two years later.

Defendant should be entitled to develop by cross-examination and otherwise such proof as it can with respect to knowledge obtained by the plaintiff prior to the payment under the letter of credit.

Similar issues of fact are left with respect to the fourth affirmative defense which Judge Bondy has previously sustained against a motion to strike. It alleges that plaintiff had information as to Trans-America's fraud and failed to take effective steps to protect itself and failed to notify the defendant.

The third defense alleges that the action against the defendant is barred by the Carriage of Goods by Sea Act. As I have explained, the affidavits and pleadings leave no issue with respect to this defense. The claim is not one arising under the Carriage of Goods by Sea Act and it is not barred by the statute of limitations contained therein. Consequently the plaintiff is granted summary judgment with respect to this defense.

The fourth defense must be stricken as inconsistent with my denial of defendant's motion to dismiss the complaint for failing to state a claim for which relief can be granted.

In all other respects all motions are denied.

It is so ordered.