**G. A. C. COMMERCIAL CORPORATION,**
Plaintiff,

v.

**John D. WILSON, Dudley Luce, Burton C. Meighan, Abe Cooper, Sheru Lalvani, Norwood & St. Lawrence Railroad Co.,**
Defendants.

No. 66 Civ. 2267.

United States District Court
S. D. New York.

July 24, 1967.

LeBoeuf, Lamb & Leiby, New York City, for defendant, Norwood & St. Lawrence R. Co., Taylor R. Briggs, New York City, of counsel.

Glatzer, Glatzer & Evans, New York City, for plaintiff, William Glatzer, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

■ Plaintiff G. A. C. Commercial Corporation (G.A.C.), a Delaware corporation, brings this action sounding in fraud against the five individual defendants and in negligence against a New York corporation, Norwood & St. Lawrence Railroad Co. (Norwood), a rail carrier in interstate commerce. Defendant Norwood now moves, pursuant to Rule 12(c), F.R.Civ.P., for judgment on the pleadings dismissing the fourth count of the complaint. Since matters outside the pleadings have been presented and considered the motion will be treated as one for summary judgment under Rule 56, F.R.Civ.P.

The gravamen of the action is spelled out in the first three counts of the complaint, laid solely against the individual defendants. It is alleged that on October 17, 1963, plaintiff G. A. C. entered into an accounts receivable financing agreement with St. Lawrence Pulp & Paper Corp. (St. Lawrence), a New York corporation. Under the terms of the agreement G. A. C. was to make advances to St. Lawrence, which agreed to "pledge, assign and transfer to G. A. C. all the [b]orrower's right, title and interest in and to accounts receivable * * * then owing" to St. Lawrence.

Pursuant to the agreement St. Lawrence forwarded copies of its invoices together with copies of bills of lading to G. A. C., which, upon receipt, advanced the monies to St. Lawrence at the agreed discount. Repayment of the debts due was guaranteed in writing by the defendant Wilson who was a corporate officer of St. Lawrence. G. A. C. ultimately advanced $356,883.57 under the financing agreement, no part of which has been repaid. St. Lawrence is now a bankrupt.

The first claim for relief seeks recovery of the entire amount from the individual guarantor Wilson. The second claim alleges that certain of the accounts receivable forwarded to plaintiff were false and fraudulent, and that in reliance upon these accounts G. A. C. advanced the sum of $254,173.42 which has not been repaid. The individual defendants, who, with the exception of Lalvani, are described as officers and/or directors of St. Lawrence, are charged with knowledge that these accounts were false and fraudulent. The third claim simply adds a conspiracy allegation against the individual defendants describing a scheme to "defraud and deceive the plaintiff" by forwarding false and fraudulent accounts receivable.

This motion is addressed to the fourth claim for relief laid solely against Norwood. That claim alleges that the fraudulent accounts receivable described were "upon the form of bill of lading" of defendant Norwood "and were countersigned by its agent." Norwood is charged with negligence in failing to require any inspection of the quantity of goods shipped before verifying the bills of lading and in permitting a situation to occur in which the fraudulent and nonexistent accounts could be forwarded to G. A. C.

Norwood's answer alleges failure to state a claim on which relief can be granted and contributory negligence. By way of separate defense it denies any knowledge or information as to the falsity of the bills of lading or with respect to the financing agreement between St. Lawrence and G. A. C. The answer also alleges that the bills of lading involved are "uniform straight bill[s] of lading— not negotiable," as in fact they are, under Section 2 of the Federal Bills of Lading Act. 49 U.S.C. § 82.

The controversy here concerns 62 invoices and accompanying straight bills of lading forwarded to G. A. C. by St. Lawrence during 1964. Sixty of these bills concern interstate shipments of paper from St. Lawrence in Norfolk, New York, to Mohegan Converters in Hillside, New Jersey, and involve advances of $245,811.19. Each of the sixty interstate bills was on Norwood's bill of lading, and it is conceded for purposes of this motion, though denied in the answer, that the bills were signed by one of Norwood's agents.

The other two bills involve advances of $8,362.23 on two intrastate shipments from St. Lawrence to Norwood Converting, Inc. in Norfolk, New York, and to Board of Education Depository, Long Island City, New York, respectively. The bills of lading on these shipments were not on Norwood forms and were not signed by Norwood's agents. In fact there is no evidence that Norwood issued these bills or had anything to do with them.

The method by which the alleged fradulent scheme was carried out appears for purposes of this motion to be as follows: the bankrupt St. Lawrence, as part of its facilities in Norfolk, New York, maintained a railroad siding connected with the lines of defendant carrier

which had a freight office approximately ⅛th of a mile from the siding. St. Lawrence was permitted to load freight at its spur track in preparation for shipments on defendant's line. The railroad cars were sealed by St. Lawrence with seals provided by the railroad. St. Lawrence also prepared the bills of lading on blanks furnished in quadruplicate by defendant Norwood. The bills thus prepared were then presented to Norwood's agent who signed the original and one copy without inspecting the contents of the cars. No notation such as "contents of packages unknown" or "shipper's weight, load and count" was written on the bills. The signed copies were returned to St. Lawrence and forwarded with the invoices to G. A. C. which made advances on the goods described, which, as it turned out, had not been shipped.

■ Since sixty of the bills of lading were issued by a common carrier for the transportation of goods in interstate commerce, the issues as to these bills are controlled by the provisions of the Federal Bills of Lading Act. 49 U.S.C. § 81. This statute stands as "a clear expression of the determination of Congress to take the whole subject matter of such bills of lading within its control." 2 Williston, Sales § 406a, at 535 (rev. ed.1948); see Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). As such, it squarely bars the fourth claim asserted against defendant Norwood on the sixty bills representing interstate shipments.

Prior to the passage of the Federal Bills of Lading Act "the United States courts held that a carrier was not liable for the act of its agent in issuing a bill of lading for goods where no goods had in fact been received." Josephy v. Panhandle & S. F. Ry., 235 N.Y. 306, 310, 139 N.E. 277, 278 (1923); see, e. g., Clark v. Clyde S. S. Co., 148 F. 243 (S.D.N.Y.1906). The liability of carriers for acts of their agents was expanded, but not drastically, by the passage of the federal legislation which draws a sharp distinction between order bills of lading and straight bills where in fact the goods are never received for shipment by the carrier. Under § 22 of the Act, 49 U.S.C. § 102, "[i]f a bill of lading has been issued by a carrier or on his behalf by an agent or employee * *, the carrier shall be liable to * * * the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, * * * for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown." However, the liability of the carrier for nonreceipt extends only to "the owner of goods covered by a straight bill," [1] provided, of course, he also gives value in good faith in reliance upon the description of goods contained in the bill. See Strohmeyer & Arpe Co. v. American Line S. S. Corp., 97 F.2d 360, 362 (2d Cir. 1938).

■ It is clear that a party in the position of Norwood is not included within the narrow category of those liable on a straight bill under the federal legislation. In the first place there is no question that the straight bills of lading here involved are nonnegotiable. 49 U.S.C. § 109; see The Isla de Panay, 292 F. 723, 731 (2d Cir. 1923), aff'd sub nom, Austin Nichols & Co. v. Steamship "Isla

---

1. Section 22 of the Act, 49 U.S.C. § 102, in its complete form, reads as follows:

"§ 102. *Liability for nonreceipt or misdescription of goods.*

If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, or upon the shipment being made upon the date therein shown, for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown, or their failure to correspond with the description thereof in the bill at the time of its issue."

de Panay," 267 U.S. 260, 45 S.Ct. 269, 69 L.Ed. 603 (1925); George F. Hinricks, Inc. v. Standard Trust & Sav. Bank, 279 F. 382, 383 (2d Cir. 1922). As a consequence plaintiff G. A. C., as apparent transferee of these bills and invoices representing accounts receivable under the agreement with St. Lawrence, upon notification to the carrier of the transfer,[2] could only "become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification." 49 U.S.C. § 112; see id. § 109. Norwood obviously owed St. Lawrence nothing because no goods in fact were received. There was therefore no outstanding obligation to G. A. C. Cheasapeake & Ohio R. Co. v. State Nat'l Bank, 280 Ky. 444, 133 S.W.2d 511, 130 A.L.R. 1306, second appeal, 283 Ky. 443, 141 S.W.2d 869, 130 A.L.R. 1314, cert. den., 311 U.S. 689, 61 S.Ct. 73, 85 L.Ed. 446 (1940). Compare Strohmeyer & Arpe Co. v. American Line S. S. Corp., 97 F.2d 360, 362 (2d Cir. 1938).

By no stretch of the imagination does G. A. C. qualify as an "owner of goods covered by a straight bill" who can sue the carrier under § 22 of the Federal Bills of Lading Act, 49 U.S.C. § 102, for representing that goods in fact had been received. The reason for this is that it is completely illusory to attempt to assign an "owner" to non-existent goods. R. Braucher, Documents of Title 23 (1958); 2 S. Williston, Sales § 419a, at 576–77 (rev.ed.1948). While the consignee is generally deemed to have title to goods shipped under a straight bill of lading, see George F. Hinrichs, Inc. v. Standard Trust & Sav. Bank, 279 F. 582, 386 (2d Cir. 1922), even he cannot sue the carrier for representing in a straight bill that non-existent goods had in fact been received. Martin Jessee Motors v. Reading Co., 87 F.Supp. 318 (E.D.Pa.), aff'd, 181 F.2d 766 (3d Cir. 1950). The rationale applied in *Martin Jessee Motors*—that the consignee can prevail against the carrier "only by proving its title to specific property," 181 F.2d at 767—applies *a fortiori* to bar the claim of G. A. C. Plaintiff's interest in the "aggregate face value of the accounts receivable pledged as security"[3] under no conceivable reading of the statute can be deemed an "[ownership] of goods covered by a straight bill." G. A. C. is not one of the favored few who can recover under the Federal Bills of Lading Act. Martin Jessee Motors v. Reading Co., supra; Cheasapeake & Ohio R. Co. v. State Nat'l Bank, supra; 2 Williston, Sales §§ 419a, 419b (rev.ed.1948); Uniform Commercial Code: Article 7—Documents of Title, 29 Albany L.Rev. 46–47 (1965); Casenote, 63 Harv.L.Rev. 1439 (1950).

Plaintiff G. A. C. fares no better with respect to the two bills of lading representing intrastate shipments in New York. Of decisive importance, of course, are the facts that these shipments were not on Norwood forms and were not signed by Norwood's agents. Even if they were, the carrier would escape liability. Although the awkward term "owner" in 49 U.S.C. § 102 has been replaced by the word "consignee" in the Uniform Commercial Code § 7–301[4] and

---

2. The defendant Norwood apparently first received notice from G. A. C. by letter dated February 16, 1965. See Def. Ex. B.

3. Accounts Receivable Agreement Between St. Lawrence and G. A. C., Oct. 17, 1963, ¶ 3.

4. Subsection (1) reads as follows: "A consignee of a non-negotiable bill who has given value in good faith or a holder to whom a negotiable bill has been duly negotiated relying in either case upon the description therein of the goods, or upon the date therein shown, may recover from the issuer damages caused by the misdating of the bill or the nonreceipt or misdescription of the goods, except to the extent that the document indicates that the issuer does not know whether any part or all of the goods in fact were received or conform to the description, as where the description is in terms of marks or labels or kind, quantity, or condition or the receipt or description is qualified by 'contents or condition of contents of packages unknown', 'said to contain', 'shipper's weight, load and count' or the like, if such indication be true."

the Uniform Bills of Lading Act § 23,[5] each of which would govern the issues of liability on one of the bills of lading representing an intrastate shipment.[6] the change is immaterial for purposes of this case. Plaintiff, perhaps an assignee, transferee or pledgee of the non-negotiable bills, though it claims not to be, *is certainly not a "consignee," which is the only party protected.* 2 Anderson, Uniform Commercial Code 261 n. 9 (1961); see R. Braucher, Documents of Title 23–24 (1958). Contrast U.C.C. § 7–203. Thus, as with the sixty interstate bills, G. A. C. cannot successfully sue on the two intrastate bills.

█ G. A. C. cannot avoid the results dictated by the statute by casting its claim for relief in terms of common law negligence. G. A. C. was sent sixty straight interstate bills of lading by St. Lawrence. The alleged negligence consists of Norwood's permitting a situation to develop in which St. Lawrence could make untrue representations that goods had in fact been shipped under the straight bills. G. A. C. claims that it relied to its detriment upon certain statements contained in the bills. The action is based on the bills not on Norwood's negligence. "[T]he negligent or reckless language on which * * * the action is founded, language certifying the receipt of the goods, is the language of the bills— were the bills ignored, there would be nothing on which to base the action, since no representation was made apart from them." Cheasapeake & Ohio R. Co. v. State Nat'l Bank, 280 Ky. 444, 450, 133 S.W.2d 511, 514 (1939). A holding

to the contrary would permit any party to circumvent the restrictions of the Federal Bills of Lading Act through the insertion of a talismanic characterization of its claim as one for "negligence." It is quite plain, however, that the declaration in 49 U.S.C. § 81—"bills of lading issued by any common carrier for the transportation of goods" between the states "shall be governed by this chapter"—must be taken to preclude alternative and supplementary liability under state law. Cheasapeake & Ohio R. Co. v. State Nat'l Bank, supra; cf. Indussa Corp. v. S. S. "Ranborg," 377 F.2d 200, 204 (2d Cir. 1967); Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948 (1916). Casenote, 63 Harv.L.Rev. 1439 (1950). The substance of the rule cannot be avoided by the form of the complaint.

The authorities relied upon by plaintiff are not in point here. Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 27 F.2d 129 (2d Cir. 1928), involved negotiable order bills of lading (not straight bills) covering shipments of goods originating in a foreign country, a transaction which in any event is not governed by the federal statute. 49 U.S.C. § 81. And Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd., 265 F.2d 418, 76 A.L.R.2d 1344 (2d Cir. 1959), affirming 155 F.Supp. 886 (S.D.N.Y.1957), specifically avoided passing on the effect of the Federal Bills of Lading Act. 265 F.2d at 425. The tort cause of action upheld by the District Court in *Toho Bussan Kaisha* was apparently derived from 49 U.S.C. § 121 which condemns as criminal the knowing issuance of false bills of lading "with intent to defraud." No

---

5. This section provides in pertinent part: "§ 23. *Liability for non-receipt or misdescription of goods.*—If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the issuing of bills of lading, the carrier shall be liable *to*

  (a) The consignee named in a non-negotiable bill,

  (b) The holder of a negotiable bill, Who has given value in good faith re-

lying upon the description therein of the goods, for damages caused by the non-receipt by the carrier or a connecting carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

6. One of the bills is dated September 24, 1964; the other is dated September 28, 1964. In New York the Uniform Commercial Code superseded the Uniform Bills of Lading Act on September 27, 1964.

allegations of intentional misconduct by Norwood are included in the complaint nor is there any indication of such misconduct in the facts. Finally, Gleason v. Seaboard Air Line Ry., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415 (1929), not cited by plaintiff, did hold a carrier liable for deceit by its agents in giving false notice of the arrival of a shipment; but such a transaction obviously did not, as here, involve bills of lading issued by agents having authority to do so. 278 U.S. at 358, 49 S.Ct. 161; 49 U.S.C. § 102.

It is true that the result dictated by the federal legislation may lead to some inequities. A straight bill under the Federal Bills of Lading Act is obviously not a good security risk. Casenote, 63 Harv.L.Rev. 1439, 1440 (1950). The fraud of the shipper by failing to deliver goods to the carrier can result, as it did here, in misleading statements on the bills of lading, which operate to the detriment of banks and other commercial financers making advances on the basis of the bills. See Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 27 F.2d 129, 134 (2d Cir. 1928) (A. Hand, J.). Moreover, the carrier can readily prevent such a situation from arising by inserting "in the bill of lading the words, 'Shipper's weight, load, and count,' or other words of like purport" to "indicate that the goods were loaded by the shipper and the description of them made by him." 49 U.S.C. § 101.

▮ But the overriding policy considerations in the Act look the other way on the issue of liability. First, "[t]here is nothing in the statute to indicate that the mere omission of the words 'Shipper's weight, load, and count' in and of itself makes the carrier liable for damages to goods improperly loaded. The omission of the statutory words merely serves to shift upon the carrier the burden of proving that the goods were improperly loaded by the shipper, and that

the damage ensued from that cause." Modern Tool Corp. v. Pennsylvania R. Co., 100 F.Supp. 595, 596–597 (D.N.J. 1951); see U.C.C. § 7–301(4). According to the allegations the true culprits in this case were the shipper and its agents; there is no reason to saddle defendant Norwood with liability simply because it did not insert the "Shipper's weight, load, and count" language in the bills. In addition, practicality demands loading arrangements such as those here, where the shipper places his goods aboard and seals the railroad car which the carrier has provided. Section 21 of the Act, 49 U.S.C. § 101, anticipates that shippers are expected to do much of the counting and loading on their own sidings or spur tracks. The rapid flow of commerce might well be hindered if the carrier in every instance were charged with ascertaining whether in fact there were goods behind every one of its straight bills.

Moreover, denying security value to a straight bill of lading does not work a hardship upon banks and other commercial institutions. G. A. C., as a knowledgeable lender, is fully aware of the risks inherent in straight bills, and could well have required order bills to protect itself. See Chicago & Northwestern Ry. v. Stevens Nat'l Bank, 75 F.2d 398 (8th Cir. 1935). It nevertheless chose to rely upon straight bills to lend money to the now bankrupt St. Lawrence at a profitable rate of interest.[7] Wiser now, G. A. C. seeks to shift its loss to Norwood, an undoubtedly solvent defendant. The Federal Bills of Lading Act protects against this type of hindsight by requiring the lender to accept this kind of security subject to the defenses between the carrier and the shipper.

The motion of defendant Norwood for judgment on the pleadings treated as a motion for summary judgment is granted.

It is so ordered.

7. Accounts Receivable Agreement, ¶ 2.